[Nos. S015917, S019540. Aug. 31, 1992.]

NEDLLOYD LINES B.V. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
SEAWINDS LIMITED, Real Party in Interest.

**COUNSEL**

Walsh, Donovan, Lindh & Keech, Charles S. Donovan, Ann S. Crownover and Elizabeth M. Miller for Petitioners.

No appearance for Respondent.

Furth, Fahrner & Mason, Thomas R. Fahrner, Michele C. Jackson and Michael R. Hudson for Real Party in Interest.

## OPINION

**BAXTER, J.**—We granted review to consider the effect of a choice-of-law clause in a contract between commercial entities to finance and operate an international shipping business. In our order granting review, we limited our consideration to the question whether and to what extent the law of Hong Kong, chosen in the parties' agreement, should be applied in ruling on defendant's demurrer to plaintiff's complaint.

We conclude the choice-of-law clause, which requires that the contract be "governed by" the law of Hong Kong, a jurisdiction having a substantial connection with the parties, is fully enforceable and applicable to claims for breach of the implied covenant of good faith and fair dealing and for breach of fiduciary duties allegedly arising out of the contract. Our conclusion rests on the choice-of-law rules derived from California decisions and the Restatement Second of Conflict of Laws, which reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses. Based on our conclusion, we will reverse the judgments of the Court of Appeal and remand for further proceedings.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

Plaintiff and real party in interest Seawinds Limited (Seawinds) is a shipping company, currently undergoing reorganization under chapter 11 of the United States Bankruptcy Code, whose business consists of the operation of three container ships. Seawinds was incorporated in Hong Kong in late 1982 and has its principal place of business in Redwood City, California. Defendants and petitioners Nedlloyd Lines B.V., Royal Nedlloyd Group N.V., and KNSM Lines B.V. (collectively referred to as Nedlloyd) are interrelated shipping companies incorporated in the Netherlands with their principal place of business in Rotterdam.

In March 1983, Nedlloyd and other parties (including an Oregon corporation, a Hong Kong corporation, a British corporation, three individual residents of California, and a resident of Singapore) entered into a contract with Seawinds to purchase shares of Seawinds's stock. The contract, which was entitled "Shareholders' Agreement in Respect of Seawinds Limited," stated that its purpose was "to establish [Seawinds] as a joint venture company to carry on a transportation operation." The agreement also provided that Seawinds would carry on the business of the transportation

company and that the parties to the agreement would use "means reasonably available" to ensure the business was a success.

The shareholders' agreement between the parties contained the following choice-of-law and forum selection provision: "This agreement shall be governed by and construed in accordance with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts."

In January 1989, Seawinds sued Nedlloyd, alleging in essence that Nedlloyd breached express and implied obligations under the shareholders' agreement by: "(1) engaging in activities that led to the cancellation of charter hires that were essential to Seawinds' business; (2) attempting to interfere with a proposed joint service agreement between Seawinds and the East Asiatic Company, and delaying its implementation; (3) making and then reneging on commitments to contribute additional capital, thereby dissuading others from dealing with Seawinds, and (4) making false and disparaging statements about Seawinds' business operations and financial condition." Seawinds's original and first amended complaint included causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing (in both contract and tort), and breach of fiduciary duty. This matter comes before us after trial court rulings on demurrers to Seawinds's complaints.

Nedlloyd demurred to Seawinds's original complaint on the grounds that it failed to state causes of action for breach of the implied covenant of good faith and fair dealing (either in contract or in tort) and breach of fiduciary duty. In support of its demurrer, Nedlloyd contended the shareholders' agreement required the application of Hong Kong law to Seawinds's claims. In opposition to the demurrer, Seawinds argued that California law should be applied to its causes of action.

In ruling on Nedlloyd's demurrer, the trial court expressly determined that California law applied to all of Seawinds's causes of action. It sustained the demurrers with leave to amend as to all causes of action, relying on grounds not pertinent to the issues before us. Nedlloyd sought a writ of mandate from the Court of Appeal directing the application of Hong Kong law. After the Court of Appeal summarily denied Nedlloyd's initial writ petition, we granted Nedlloyd's petition for review and transferred the case back to the Court of Appeal with instructions to issue an alternative writ.

After complying with our direction, the Court of Appeal denied Nedlloyd's first writ petition and discharged the alternative writ. In a published

opinion, the Court of Appeal upheld the application of California law to Seawinds's claims. We granted Nedlloyd's petition for review.

In the meantime, the trial court overruled Nedlloyd's demurrer to Seawinds's first amended complaint, again applying California law to Seawinds's causes of action. The Court of Appeal summarily denied Nedlloyd's second writ petition challenging the order overruling the latter demurrer; we also granted review of that order and consolidated proceedings on the two writ matters so as to preserve the choice-of-law issue for review. As noted above, we have limited review in both proceedings to the choice-of-law issue.

DISCUSSION

I. *The proper test*

We have not previously considered the enforceability of a contractual choice-of-law provision. ■ We have, however, addressed the closely related issue of the enforceability of a contractual choice-of-forum provision, and we have made clear that, "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 495-496 [131 Cal.Rptr. 374, 551 P.2d 1206] (*Smith*).) The forum selection provision in *Smith* was contained within a choice-of-law clause, and we observed that, "Such choice of law provisions are usually respected by California courts." (*Id.*, at p. 494.) We noted this result was consistent with the modern approach of section 187 of the Restatement Second of Conflict of Laws (Restatement). (17 Cal.3d at p. 494.) Prior Court of Appeal decisions, although not always explicitly referring to the Restatement, also overwhelmingly reflect the modern, mainstream approach adopted in the Restatement. (*Mencor Enterprises, Inc.* v. *Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 435-436 [235 Cal.Rptr. 464] [explicit reference to Rest. § 187]; *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411, 417 [197 Cal.Rptr. 757] [no explicit reference]; *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790, 794-795 [181 Cal.Rptr. 340] [no explicit reference]; *Gamer* v. *duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287 [135 Cal.Rptr. 230] [explicit reference to Rest. § 187].)[1]

■ We reaffirm this approach. In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall

---

[1]Federal courts applying California's conflicts law have also adhered to this approach. (*Consul Ltd.* v. *Solide Enterprises, Inc.* (9th Cir. 1986) 802 F.2d 1143, 1146-1147; *S. A.*

apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions.[2]

More specifically, Restatement section 187, subdivision (2) sets forth the following standards: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[3]

---

*Empresa, etc.* v. *Boeing Co.* (9th Cir. 1981) 641 F.2d 746, 749; *Sarlot-Kantarjian* v. *First Pa. Mortg. Trust* (9th Cir. 1979) 599 F.2d 915, 917.) The mainstream nature of this approach is further reflected by a recent study indicating that 15 states other than California follow the general approach of the Restatement Second. (Chow, *Limiting Erie in a New Age of International Law: Toward a Federal Common Law of International Choice of Law* (1988) 74 Iowa L.Rev. 165, 190-191.)

[2]There may be an exception to application of the Restatement approach. Choice-of-law issues arising from contracts subject to the Uniform Commercial Code are governed by California Commercial Code section 1105, subdivision (1), which provides that, subject to specified exceptions, the parties may choose the law of a state having a "reasonable relation" to the transaction. This "reasonable relation" test appears to be similar to the "substantial relationship" test we adopt from the Restatement. (See official code com. to U. Com. Code § 1-105 [Deering's Ann. Cal. U. Com. Code, § 1105 (1986 ed.) p. 10; 23A West's Ann. Cal. U. Com. Code, § 1105 (1964 ed.) p. 37].) Neither party to this action, however, contends that California Uniform Commercial Code section 1105 applies to their contract. We therefore need not and do not determine whether and to what extent, if any, the Commercial Code and Restatement approaches are different.

[3]Subdivision (1) of section 187 of the Restatement states: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." As comment c to section 187, subdivision (1) explains: "The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. . . . [M]ost rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions." (Rest., § 187, subd. (1), com. c, p. 563.) The record in this case does not indicate that the parties incorporated by reference extrinsic material in the form of Hong Kong law in order to fill a gap in their contract. Subdivision (1) therefore is not at issue, and we need not and do not further consider its potential application or scope.

Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.[4] If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.[5] If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.[6] We now apply the Restatement test to the facts of this case.

---

[4]As noted above, a different result might obtain under Restatement section 187, subdivision (1), which appears to allow the parties *in some circumstances* to specify the law of a state that has no relation to the parties or their transaction. The Restatement gives these two illustrations: "4. In State X, A establishes a trust and provides that B, the trustee, shall be paid commissions at the highest rate permissible under the local law of state Y. *A and B are both domiciled in X, and the trust has no relation to any state but X.* In X, the highest permissible rate of commissions for trustees is 5 per cent. In Y, the highest permissible rate is 4 per cent. The choice-of-law provision will be given effect, and B will be held entitled to commissions at the rate of 4 per cent. [¶] 5. Same facts as in Illustration 4 except that the highest permissible rate of commissions in X is 4 per cent and in Y is 5 per cent. Effect will not be given to the choice-of-law provision since under X local law the parties lacked power to provide for a rate of commissions in excess of 4 per cent and Y, the state of the chosen law, has no relation to the parties or the trust." (Rest., § 187, subd. (1), com. c., illus. 4 & 5, p. 564; italics added.)

[5]To be more precise, we note that Restatement section 187, subdivision (2) refers not merely to the forum state—for example, California in the present case—but rather to the state ". . . which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." For example, there may be an occasional case in which California is the forum, and the parties have chosen the law of another state, but the law of yet a third state, rather than California's, would apply absent the parties' choice. In that situation, a California court will look to the fundamental policy of the third state in determining whether to enforce the parties' choice of law. The present case is not such a situation.

[6]There may also be instances when the chosen state has a materially greater interest in the matter than does California, but enforcement of the law of the chosen state would lead to a result contrary to a fundamental policy of California. In some such cases, enforcement of the law of the chosen state may be appropriate despite California's policy to the contrary. (*S. A. Empresa, etc. v. Boeing Co., supra,* 641 F.2d 746, 749.) Careful consideration, however, of California's policy and the other state's interest would be required. No such question is present in this case, and we thus need not and do not decide how Restatement section 187 would apply in such circumstances.

## II. *Application of the test in this case*

### A. *Breach of contract*

Nedlloyd did not assert in its second demurrer that the amended complaint failed to state a cause of action under Hong Kong law for breach of contract. Rather, Nedlloyd challenged the amended complaint's breach of contract allegations only on the ground of uncertainty. (Code Civ. Proc., § 430.10, subd. (f).) In light of our order limiting review to the issue of whether Hong Kong law "should be applied in ruling on the demurrers," we need not and do not consider the correctness of the trial court's ruling on the demurrer to this cause of action. As we shall explain, however, Hong Kong law, although not asserted as a bar to Seawinds's contract cause of action at the pleading stage, does govern all causes of action pleaded in the amended complaint, including the contract cause of action.

### B. *Implied covenant of good faith and fair dealing*

#### 1. *Substantial relationship or reasonable basis*

As to the first required determination, Hong Kong—"the chosen state"—clearly has a "substantial relationship to the parties." (Rest., § 187, subd. (2)(a).) The shareholders' agreement, which is incorporated by reference in Seawinds' first amended complaint, shows that Seawinds is incorporated under the laws of Hong Kong and has a registered office there. The same is true of one of the shareholder parties to the agreement—Red Coconut Trading Co. The incorporation of these parties in Hong Kong provides the required "substantial relationship." (*Id.*, com. f [substantial relationship present when "one of the parties is domiciled" in the chosen state]; *Carlock* v. *Pillsbury Co.* (D.Minn. 1988) 719 F.Supp. 791, 807 ["A party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract."]; *Hale* v. *Co-Mar Offshore Corp.* (W.D.La. 1984) 588 F.Supp. 1212, 1215 [same effect].)

Moreover, the presence of two Hong Kong corporations as parties also provides a "reasonable basis" for a contractual provision requiring application of Hong Kong law. "If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice." (*Consul Ltd.* v. *Solide Enterprises, Inc., supra,* 802 F.2d 1143, 1147.) The reasonableness of choosing Hong Kong becomes manifest when the nature of the agreement before us is considered. A state of incorporation is certainly at least one government entity with a keen and intimate interest in internal corporate affairs, including the purchase and sale of its shares, as well as corporate management and

operations. (See Corp. Code, § 102 [applying California's general corporation law to domestic corporations].)

## 2. *Existence of fundamental public policy*

We next consider whether application of the law chosen by the parties would be contrary to "a fundamental policy" of California. We perceive no fundamental policy of California requiring the application of California law to Seawinds's claims based on the implied covenant of good faith and fair dealing. The covenant is not a government regulatory policy designed to restrict freedom of contract, but an implied promise inserted in an agreement to carry out the presumed intentions of contracting parties. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 689-690 [254 Cal.Rptr.211, 765 P.2d 373] (*Foley*) ["When a court enforces the implied covenant it is in essence acting to protect 'the interest in having promises performed' [citation]—the traditional realm of a contract action—rather than to protect some general duty to society which the law places on an employer without regard to the substance of its contractual obligations to its employee."].)

Seawinds directs us to no authority exalting the *implied* covenant of good faith and fair dealing over the *express* covenant of these parties that Hong Kong law shall govern their agreement. We have located none. Because Seawinds has identified no fundamental policy of our state at issue in its essentially contractual dispute with Nedlloyd, the second exception to the rule of section 187 of the Restatement does not apply.

## C. *Fiduciary duty cause of action*

### 1. *Scope of the choice-of-law clause*

 Seawinds contends that, whether or not the choice-of-law clause governs Seawinds's implied covenant claim, Seawinds's fiduciary duty claim is somehow independent of the shareholders' agreement and therefore outside the intended scope of the clause. Seawinds thus concludes California law must be applied to this claim. We disagree.

When two sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract. Initially, such an interpretation is supported by the plain meaning of the language used by the parties. ██ ██ The choice-of-law clause in the shareholders' agreement provides: "This agreement shall be *governed by* and construed in accordance

with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts." (Italics added.)[7]

 The phrase "governed by" is a broad one signifying a relationship of absolute direction, control, and restraint. Thus, the clause reflects the parties' clear contemplation that "the agreement" is to be completely and absolutely controlled by Hong Kong law. No exceptions are provided. In the context of this case, the agreement to be controlled by Hong Kong law is a shareholders' agreement that expressly provides for the purchase of shares in Seawinds by Nedlloyd and creates the relationship between shareholder and corporation that gives rise to Seawinds's cause of action. Nedlloyd's fiduciary duties, if any, arise from—and can exist only because of—the shareholders' agreement pursuant to which Seawinds's stock was purchased by Nedlloyd.

In order to control completely the agreement of the parties, Hong Kong law must also govern the stock purchase portion of that agreement and the legal duties created by or emanating from the stock purchase, including any fiduciary duties. If Hong Kong law were not applied to these duties, it would effectively control only part of the agreement, not all of it. Such an interpretation would be inconsistent with the unrestricted character of the choice-of-law clause.

Our conclusion in this regard comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a

---

[7]As we have noted, the choice-of-law clause states: "This agreement shall be governed by and *construed in accordance with Hong Kong law* . . . ." (Italics added.) The agreement, of course, includes the choice-of-law clause itself. Thus the question of whether that clause is ambiguous as to its scope (i.e., whether it includes the fiduciary duty claim) is a question of contract interpretation that in the normal course should be determined pursuant to Hong Kong law. (*S. A. Empresa, etc.* v. *Boeing Co., supra*, 641 F.2d 746, 751 [interpreting choice-of-law clause pursuant to law chosen by the parties]; *McGill* v. *Hill* (1982) 31 Wn.App. 542 [644 P.2d 680, 683].) The parties in this case, however, did not request judicial notice of Hong Kong law on this question of interpretation (Evid. Code, § 452, subd. (f)) or supply us with evidence of the relevant aspects of that law (Evid. Code, § 453, subd. (b)). The question therefore becomes one of California law. (*Com'l Ins. Co. of Newark* v. *Pacific-Peru Const.* (9th Cir. 1977) 558 F.2d 948, 952; Rest., § 136, subd. (2), com. h, p. 378.)

person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

Seawinds's view of the problem—which would require extensive litigation of the parties' supposed intentions regarding the choice-of-law clause to the end that the laws of multiple states might be applied to their dispute—is more likely the product of postdispute litigation strategy, not predispute contractual intent. If commercially sophisticated parties (such as those now before us) truly intend the result advocated by Seawinds, they should, in fairness to one another and in the interest of economy in dispute resolution, negotiate and obtain the assent of their fellow parties to explicit contract language specifying what jurisdiction's law applies to what issues.

Justice Mosk long ago cogently observed that, "Given two experienced businessmen dealing at arm's length, both represented by competent counsel, it has become virtually impossible under recently evolving rules of evidence to draft a written contract that will produce predictable results in court. The written word, heretofore deemed immutable, is now at all times subject to alteration by self-serving recitals based upon fading memories of antecedent events. This, I submit, is a serious impediment to the certainty required in commercial transactions." (*Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525, 532 [72 Cal.Rptr. 785, 446 P.2d 785] (dis. opn. of Mosk, J.).)

With due acknowledgment of Justice Mosk's prescience, other courts have more recently reiterated that, "While [the] rule [of easily pleaded ambiguity] creates much business for lawyers and an occasional windfall to some clients, it leads only to frustration and delay for most litigants and clogs already overburdened courts." (*Trident Center* v. *Connecticut General Life Ins.* (9th Cir. 1988) 847 F.2d 564, 569; *Wilson Arlington Co.* v. *Prudential Ins. Co.* (9th Cir. 1990) 912 F.2d 366, 370.) We need not envelop choice-of-law clauses in this fog of uncertainty and ambiguity.

For the reasons stated above, we hold a valid choice-of-law clause, which provides that a specified body of law "governs" the "agreement" between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.

### 2. *Enforceability of chosen law as to fiduciary duty claim*

Applying the test we have adopted (see pt. I, *ante*, at pp. 464-466.), we find no reason not to apply the parties' choice of law to Seawinds's cause of

action for breach of fiduciary duty. As we have explained, Hong Kong, the chosen state, has a "substantial relationship to the parties" because two of those parties are incorporated there. Moreover, their incorporation in that state affords a "reasonable basis" for choosing Hong Kong law. (See pt. II.B.1., *ante*, at pp. 467-468].)

Seawinds identifies no fundamental public policy of this state that would be offended by application of Hong Kong law to a claim by a Hong Kong corporation against its allegedly controlling shareholder. We are directed to no California statute or constitutional provision designed to preclude freedom of contract in this context. Indeed, even in the absence of a choice-of-law clause, Hong Kong's overriding interest in the internal affairs of corporations domiciled there would in most cases require application of its law. (See Rest., § 306 [obligations owed by majority shareholder to corporation determined by the law of the state of incorporation except in unusual circumstances not present here]; *McDermott Inc.* v. *Lewis* (Del.Super.Ct. 1987) 531 A.2d 206, 214-216 [corporate voting rights dispute governed by law of state of incorporation]; *Matter of Reading Co.* (3d Cir. 1983) 711 F.2d 509, 517 [minority shareholder fiduciary duty claim governed by law of state of incorporation].)

For strategic reasons related to its current dispute with Nedlloyd, Seawinds seeks to create a fiduciary relationship by disregarding the law Seawinds voluntarily agreed to accept as binding—the law of a state that also happens to be Seawinds's own corporate domicile. To allow Seawinds to use California law in this fashion would further no ascertainable fundamental policy of California; indeed, it would undermine California's policy of respecting the choices made by parties to voluntarily negotiated agreements.

## DISPOSITION

By a choice-of-law clause in a fully negotiated commercial contract, the parties have chosen Hong Kong law to apply to their dispute in this case, including each of the causes of action asserted by Seawinds.

Seawinds's action is now proceeding based on its first amended complaint, which will be the focus of further proceedings applying Hong Kong law to resolve the parties' differences. Therefore, the judgments of the Court of Appeal in the consolidated proceedings (Court of Appeal Nos. A049718 and A050535) are reversed, and the matters are remanded to the Court of Appeal with instructions to issue a peremptory writ of mandate directing the

trial court to reconsider its ruling on Nedlloyd's demurrer to Seawinds's first amended complaint in light of applicable Hong Kong law.

Lucas, C. J., Arabian, J., and George, J., concurred.

**PANELLI, J.,** Concurring and Dissenting.—I generally concur in the majority opinion's explanation of the standards controlling when a contractual choice-of-law provision will be honored by the courts of this state and with the majority's application of these standards to Seawinds's cause of action for breach of the covenant of good faith and fair dealing. I write separately to express my disagreement with the majority's conclusion, based on the record before us, that the choice-of-law clause in this case governs Seawinds's cause of action for breach of fiduciary duty. In my view, the majority's analysis of the scope of the choice-of-law clause is unsound.

The choice-of-law clause in this case reads in pertinent part: "This agreement shall be governed by and construed in accordance with Hong Kong law. . . ."[1] The majority determines that the scope of the choice-of-law clause, which was incorporated into the first amended complaint by attachment, extends to related, *noncontractual* causes of action, such as Seawinds's breach of fiduciary duty claim. In so doing, the majority opinion adopts the rule that "[w]hen two sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." (Maj. opn., *ante*, at p. 468.) Without citing any authority, the majority opinion announces a binding rule of contractual interpretation, based solely upon "common sense and commercial reality." (*Id.* at p. 469.)

The problem with the majority's approach is that it ignores controlling California law. On demurrer, a pleading must be liberally construed. (Code Civ. Proc., § 452.) The accepted rule of contractual construction on demurrer is that "[w]here a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action . . . ." (*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749-750 [200 Cal.Rptr. 605]; accord *Beck* v. *American*

---

[1] I agree with the majority that the scope of the choice-of-law clause in this contract is a question that would ordinarily be determined under Hong Kong law. (Maj. opn., *ante*, at p. 469.) I further agree with the majority that, since the parties neither produced any evidence of Hong Kong law relating to this subject nor requested judicial notice of any such law, we may apply California law to ascertain the scope of the clause. (*Ibid.*)

*Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1561 [260 Cal.Rptr. 237].) In this case, the language of the incorporated contract easily can be read to apply only to contractual causes of action: *"This agreement shall be governed . . . by Hong Kong law."*

In my view, the majority's mistaken construction of the choice-of-law clause is clear when the language used in the present contract is compared, as Nedlloyd urges us to do, with the language construed by this court in *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206]. In that case, this court determined that claims for unfair competition and intentional interference with advantageous business relationships were governed by a choice-of-forum clause as " 'actions or proceedings instituted by . . . [Smith] under this Agreement with respect to any matters arising under *or growing out of this agreement. . . .*' " (*Id.* at p. 497, italics in the original.) In contrast to the language used by Nedlloyd and Seawinds in their agreement, the contractual language, "arising under or growing out of this agreement," which was used in *Smith*, explicitly shows an intent to embrace related noncontractual claims, as well as contractual claims. Although similar language was readily available to them, the sophisticated parties in the present case did not draft their choice-of-law clause to clearly encompass related noncontractual causes of action.[2] Therefore, on demurrer and in the absence of parol evidence, I cannot fairly construe the contractual language at issue here to be consistent with the interpretation proposed by Nedlloyd and adopted in the majority opinion. To do so would violate the statutory canon of contract interpretation that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

. Finally, the majority's rule effectively subordinates the intent of the contracting parties to the need for predictability in commercial transactions. The majority strikes this balance despite the fact that our Legislature has commanded otherwise. Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) In contrast to this legislative command, the majority conclusively presumes that choice-of-law clauses entered into between or among commercial entities apply to related noncontractual causes of action regardless of whether the intent of the parties or the contract language (as in this case) shows otherwise. I believe that the departure by the majority from

---

[2]Despite the majority's artfully crafted argument, the words "governed by" do not assist in defining what causes of action the choice-of-law clause was intended to address. Rather, the parties defined the scope of their choice-of-law clause by choosing the phrase "[t]his agreement."

established California law is unwarranted and is unnecessary to further the goals of predictability in the enforcement of contracts and protection of the justified expectations of contracting parties. These goals can be adequately protected within the framework of the current law governing contractual interpretation by enforcing choice-of-law clauses in a manner consistent with the language of the contract and the intent of the parties.

I am keenly aware of the need for predictability in the enforcement of commercial contracts. Nevertheless, although courts and litigants may wish the law were otherwise, not every issue can be conclusively determined at the pleading stage. On the present record, the scope of the choice-of-law clause must be construed in favor of Seawinds.

Mosk, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—Fueled by advances in technology, communications and global cooperation, trade across state and international borders is vastly greater than in decades past. California occupies a leading position in the field of international trade, and this leadership is of vital importance to the welfare of the state and its residents. As commerce across borders expands, novel legal problems arise, and familiar issues assume renewed significance.

This case involves the effect of a choice-of-law clause in a contract between multinational parties to conduct an international shipping business. I agree with the majority that the parties' agreement, calling for the contract to be interpreted according to Hong Kong law, should be applied by the California courts in determining whether plaintiff, a Hong Kong corporation, has stated a cause of action for breach of the implied covenant of good faith and fair dealing. I disagree, however, with the majority's conclusion that the choice-of-law clause, which provides only that the contract shall be governed by Hong Kong law, unambiguously extends to related noncontractual causes of action and therefore should be applied by the trial court in determining whether the plaintiff has stated a cause of action for breach of fiduciary duty.

### I. Background

Defendants and petitioners Nedlloyd Lines B.V., Royal Nedlloyd Group N.V., and KNSM Lines B.V. (hereafter collectively Nedlloyd) are interrelated shipping companies based in Rotterdam, the Netherlands. Plaintiff and real party in interest Seawinds Limited (hereafter Seawinds) is a shipping company that was incorporated in Hong Kong in late 1982, with its principal place of business in Redwood City, California.

In 1983, Nedlloyd Lines B.V. entered into a contract to purchase shares in Seawinds. The other parties to the contract were an Oregon corporation, a Hong Kong corporation, a British corporation, three individual residents of California, a resident of Singapore, and Seawinds itself.[1] The agreement's stated purpose was "to establish [Seawinds] as a joint venture company to carry on a transportation operation." The contract contained this choice-of-law provision: "This agreement shall be governed by and construed in accordance with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts."

Seawinds engaged in the shipping business from April 1983 until October 1984, when it commenced bankruptcy proceedings that are apparently still pending in federal court.

In January 1989, Seawinds sued Nedlloyd,[2] alleging that Nedlloyd had detrimentally interfered with its business, reneged on promises to make capital contributions, and falsely disparaged its operation. The original complaint set forth three causes of action: (1) "Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing"; (2) "Tortious Breach of Implied Covenant of Good Faith and Fair Dealing"; and (3) "Violation of Fiduciary Duties."

Nedlloyd demurred to the complaint on the ground that under Hong Kong law the complaint failed to state a cause of action for breach of the implied covenant, tortious breach of the implied covenant, and breach of fiduciary duties. Nedlloyd also demurred to the second cause of action on the ground that "many of the necessary elements of tortious breach of contract are not pled." With respect to the third cause of action, Nedlloyd demurred on the basis that the complaint failed to allege that Nedlloyd was a majority shareholder, and that, "[i]n addition, if Hong Kong law applies, any fiduciary duties of majority shareholders run only to other shareholders, not to the corporation itself."

The trial court ruled broadly that "California law shall apply in this case." But the court sustained Nedlloyd's demurrer with leave to amend as to all three causes of action, ruling that: (1) the first cause of action should be split into two causes of action; (2) the second cause of action had not alleged a sufficient special relationship; and (3) "no controlling interest sufficient to

---

[1] Seawinds did not, however, purchase its own shares.

[2] The complaint named Nedlloyd Lines B.V. as the first defendant, and alleged alter ego relationships between it and Royal Nedlloyd Group N.V. and KNSM Lines B.V. According to the complaint, Royal Nedlloyd Group N.V. owns 100 percent of both Nedlloyd Lines B.V. and KNSM Lines B.V.

establish a fiduciary relationship" had been alleged in the third cause of action.

Nedlloyd petitioned the Court of Appeal for a writ of mandate to overturn the trial court's choice-of-law ruling. The Court of Appeal denied the writ petition.[3] It held that the trial court had properly decided to apply California law because Hong Kong, the state whose law was chosen by the parties, had no substantial relationship with the parties or their claims, and because enforcement of the choice-of-law clause would "ero[de] a California law protective of its citizens' rights" in that "Hong Kong law does not recognize the concept of an implied covenant of good faith and fair dealing in contracts whereas California implies such a covenant in every contract." The Court of Appeal also concluded: "Under Hong Kong law, shareholders seemingly owe no fiduciary duties to the company; instead, a majority shareholder might owe a fiduciary duty to another shareholder. In contrast, California law imposes a fiduciary duty on a majority of shareholders or a controlling shareholder to the minority shareholders and the company." This court granted Nedlloyd's petition for review.

Meanwhile, in the trial court, Seawinds had filed an amended complaint, alleging causes of action for: (1) "Breach of Contract"; (2) "Breach of Implied Covenant of Good Faith and Fair Dealing"; and (3) "Violations of Fiduciary Duties." Nedlloyd demurred to the amended complaint on four grounds: (1) the breach of contract cause of action was uncertain; (2) the breach of implied covenant cause of action failed under Hong Kong law; (3) the breach of implied covenant cause of action failed "because the necessary elements of such breach are not pled"; and (4) the cause of action for breach of fiduciary duty "fails to allege any duty or breach."

The trial court overruled the demurrer to the amended complaint, and Nedlloyd once again petitioned the Court of Appeal for a writ of mandate. Upon the Court of Appeal's denial of this second writ application (contemporaneous with its opinion on the first petition), this court granted Nedlloyd's separate petition for review and consolidated it with the related proceeding.

As will be explained, in substance two distinct issues are before us: (1) whether the choice-of-law clause requires the application of Hong Kong law to the implied covenant cause of action; and (2) whether the choice-of-law clause requires the application of Hong Kong law to the breach of fiduciary duty cause of action. I will discuss each issue separately.

---

[3]The Court of Appeal at first denied the writ petition summarily. This court then granted Nedlloyd's petition for review, and transferred the matter back to the Court of Appeal with directions to issue an alternative writ.

## II. Breach of the Implied Covenant

### A. *Existence of a Conflict*

The first step in the analysis of an asserted conflict of laws is to determine whether a choice of law by the court is actually required. In the context of a contractual choice-of-law clause, a conflict is presented only if there is a material difference between the law of the chosen state and the law of the state whose law would apply in the absence of an effective choice by the parties. In this case, the parties agree that if Hong Kong law does not apply, the law of California does.

In its original complaint, Seawinds pleaded two theories of liability— breach of contract and breach of the implied covenant of good faith and fair dealing—as part of the same cause of action. In the amended complaint, Seawinds separated these theories, pleading each as a cause of action. I analyze them separately.

In its demurrer to the amended complaint, Nedlloyd did not assert that the amended complaint failed to state a cause of action for breach of contract under Hong Kong law. Rather, Nedlloyd challenged the amended complaint's breach of contract allegations only on the ground of uncertainty (Code Civ. Proc., § 430.10, subd. (f)). Thus, the breach of contract cause of action presents no choice-of-law issue at this time.

Seawinds' second theory of liability in the amended complaint is breach of the implied covenant of good faith and fair dealing. In its demurrer, Nedlloyd asserted that this theory of liability fails because Hong Kong law governs the contract and, unlike California law, does not recognize an implied covenant of good faith and fair dealing. Accordingly, this theory of liability does present a choice-of-law issue, but only if, as Nedlloyd asserts, there is a material difference between the relevant law of Hong Kong and California. (See *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]; *Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740]; *New Linen Supply* v. *Eastern Environmental Controls, Inc.* (1979) 96 Cal.App.3d 810, 817, fn. 2 [158 Cal.Rptr. 251].)

Under California law, every contract contains an implied covenant of good faith and fair dealing. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373].) This implied covenant requires "that neither party do anything which will deprive the other of the benefits of the agreement" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984)

36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158]), and its breach ordinarily gives rise to contract remedies (*ibid.*).

The parties presented evidence of the relevant Hong Kong law.[4] In support of its demurrer, Nedlloyd submitted the declaration of William Catley, a Hong Kong solicitor. Based on his review of the case law, Catley stated in his declaration that Hong Kong courts will not imply a covenant into a contract unless "it is necessary either to give effect to the intentions of the parties or to give the contract business efficacy." Noting that in this case the shareholders' agreement contained a clause requiring the shareholders to cooperate in good faith, but that Seawinds was not a shareholder, Catley set forth his view that it was "unlikely that a court in Hong Kong would imply a term in the [shareholders' agreement] extending this sub-clause to include Seawinds."[5]

In response to Catley's declaration, Seawinds submitted the declaration of another Hong Kong solicitor, Geoffrey Miles. According to Miles, "the Hong Kong courts could well take the view that in order to secure the success of the venture it would be necessary, as a matter of business efficacy, to imply such a term" extending to Seawinds the good faith duties owed to the shareholders.

If Hong Kong law governs the contract, as Nedlloyd contends, Seawinds must show that business efficacy, as Hong Kong courts understand that concept, requires that a good faith term applicable to Seawinds be implied into the contract. But if California law governs the contract, as Seawinds contends, the contract must be deemed to include an implied covenant of good faith and fair dealing. Thus, there appears to be a material difference between Hong Kong and California law, necessitating a choice-of-law analysis.

---

[4]Because a demurrer raises only questions of law (Code Civ. Proc., § 589), trial courts ordinarily do not consider evidence in connection with a demurrer. But a court may consider matters subject to judicial notice when ruling on a demurrer, and foreign law is subject to judicial notice (Evid. Code, § 452, subd. (f )). In taking judicial notice, a court may rely on "the advice of persons learned in the subject matter . . . whether or not furnished by a party." (Evid. Code, § 454, subd. (a)(1); see *Estate of Chichernea* (1967) 66 Cal.2d 83, 86, fn. 2 [57 Cal.Rptr. 135, 424 P.2d 687]; *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 231 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Volkswagenwerk Aktiengesellschaft* v. *Superior Court* (1981) 123 Cal.App.3d 840, 852 [176 Cal.Rptr. 874].)

[5]The clause provides: "Each Shareholder agrees that he or it will at all times: [¶] (a) use all means reasonably available to him or it . . . so as to insure that the Company [Seawinds] shall implement the provisions of this agreement . . . ; and [¶] (b) cooperate in good faith and execute such further documents and take such other action as may be reasonably required in order to give full effect to the provisions and intent of this agreement."

## B. *Choice-of-law Standards*

Although this court has not directly addressed the enforceability of a choice-of-law provision in a contract, the issue has been the subject of a number of appellate court decisions. When a contract specifies the parties' choice of law, California courts have enforced the contractual choice-of-law clause, subject to two qualifications. First, the chosen state must bear some substantial relationship to the parties or the contract, or there must be some other reasonable basis for the parties' choice. Second, application of the chosen state's law must not violate a strong policy of California law. These standards have been adopted, with some variations in language and emphasis, by the overwhelming majority of California decisions. (See *Mencor Enterprises, Inc.* v. *Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 435-436 [235 Cal.Rptr. 464] [strong policy and substantial relationship]; *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411, 417 [197 Cal.Rptr. 757] [strong policy]; *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790, 794 [181 Cal.Rptr. 340] [strong policy and substantial relationship]; *Bos Material Handling, Inc.* v. *Crown Controls Corp.*, *supra*, 137 Cal.App.3d 99, 108 [substantial relationship]; *Gamer* v. *duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287 [135 Cal.Rptr. 230] [strong policy and substantial relationship]; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 673 [97 Cal.Rptr. 811] [strong policy and substantial relationship]; *Ury* v. *Jewelers Acceptance Corp.* (1964) 227 Cal.App.2d 11, 18, 20 [38 Cal.Rptr. 376] [strong policy].) The federal appellate courts, in applying California conflicts law, have also adhered to these rules. (*Consul Ltd.* v. *Solide Enterprises, Inc.* (9th Cir. 1986) 802 F.2d 1143, 1146-1147 [strong policy and substantial relationship]; *S. A. Empresa, etc.* v. *Boeing Co.* (9th Cir. 1981) 641 F.2d 746, 749 [same]; *Sarlot-Kantarjian* v. *First Pa. Mortg. Trust* (9th Cir. 1979) 599 F.2d 915, 917 [same]; *Foreman* v. *George Foreman Associates, Ltd.* (9th Cir. 1975) 517 F.2d 354, 357 [strong policy].)

The "substantial relationship" and "strong policy" standards of California law are similar to the approach of the Restatement Second of Conflict of Laws, section 187, subdivision (2).[6] Although some California courts have

---

[6]There is an exception. Choice-of-law issues arising from contracts that are subject to the Uniform Commercial Code are governed by California Uniform Commercial Code section 1105, which provides in pertinent part that, subject to certain exceptions, the parties may choose the law of a state having a "reasonable relation" to the transaction. Neither party contends that California Uniform Commercial Code section 1105 applies in this case. The California Uniform Commercial Code's "reasonable relation" test is in any event similar to the "substantial relationship" test I apply. (See official code com. to U. Com. Code § 1-105 [Deering's Ann. Cal. U. Com. Code, § 1105 (1986 ed.) p. 10; 23A West's Ann. Cal. U. Com. Code, § 1105 (1964 ed.) p. 37].)

referred to this part of the Restatement Second with approval, they have never expressly adopted it.[7]

As noted above, this court has not previously and directly determined the enforceability of a choice-of-law clause in a contract. The court has, however, considered the related problem of contractual forum selection clauses. In *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206], the court held that forum selection clauses are valid and may be given effect in the court's discretion and in the absence of a showing that enforcement of the clause would be unreasonable. Citing section 187 of the Restatement Second of Conflict of Laws, the court observed in passing that "choice of law provisions are usually respected by California courts." (17 Cal.3d at p. 494.) In following the general approach

---

[7]Section 187 of the Restatement Second of Conflict of Laws provides:

"(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [section] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

"(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."

California courts have frequently employed the "substantial relationship" and "strong policy" tests without reference to the Restatement Second of Conflict of Laws. (See, e.g., *Hall* v. *Superior Court, supra,* 150 Cal.App.3d at p. 417; *Ashland Chemical Co.* v. *Provence, supra,* 129. Cal.App.3d at p. 794; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d at p. 673.) Those California courts that have cited the Restatement Second of Conflict of Laws have typically focused on section 187, subdivision (2), as have the courts of other jurisdictions.

The Restatement comment to subdivision (1) explains: "The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual agreements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. . . . [M]ost rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions." (Rest.2d Conf. of Laws, § 187, subd. (1), com. c., p. 563.) Here, there is no indication that the parties incorporated by reference extrinsic material in the form of Hong Kong law in order to fill a gap in the contract. Accordingly, subdivision (1) is not at issue, and I do not further consider its potential scope.

of the Restatement Second, California courts are within the jurisprudential mainstream.[8]

In providing that the parties' choice of a state's law to govern a contract will be respected unless either the parties or the contract have no substantial relationship to the chosen state and the parties have no other reasonable basis for the choice, or application of the chosen law would violate a strong policy of the state of the law that would otherwise apply, California choice-of-law analysis reconciles differing and important interests that are in tension in many cases. The first of these interests is party autonomy.

"Party autonomy means that the parties to a contract are free to select the law that governs the contract." (Scoles & Hay, Conflict of Laws (2d ed. 1992) § 18.1, p. 657.) A basic principle of contract law is that contracts should be interpreted to give effect to the intentions of the parties (Civ. Code, § 1636), and the concept of party autonomy implements that principle in the context of choice-of-law clauses.

But to allow parties a completely unrestrained choice of the law they wish to apply to a contract would have unacceptable results. It would license parties to a contract to evade at will the law of the state in which they reside and conduct their activities; they could make contracts, enforceable in their state of residence, that had no substantial connection to the state of the chosen law and that violated the law of the state that would otherwise apply in the absence of a choice-of-law clause. In other words, to allow unrestricted party autonomy in the selection of the governing law would lead to a state's loss of control over the law of contracts and over the activities governed by that law.

Thus, contractual choice-of-law analysis recognizes both the parties' interest in autonomy and the interest of a state in applying its own law to contracts that have a substantial connection to that state. Accordingly, California cases recognize that the ability of parties to select the law that governs a contract should be limited to situations in which the state of the chosen law

---

[8]According to one recent study, fifteen states, not including California, follow the general approach of the Restatement Second; nineteen states adhere to the first Restatement, under which the court applies the law of the place where the contract was made, regardless of the parties' choice; three states and the District of Columbia employ a "center of gravity" approach; three states use a "governmental interests" approach or some variant; and in nine states the rule is unclear. (Chow, *Limiting Erie in a New Age of International Law: Toward a Federal Common Law of International Choice of Law* (1988) 74 Iowa L.Rev. 165, 190-191.) The parties do not urge this court to adopt any of the three other general approaches that have found some favor in the courts; I deem the general approach adopted by the California courts and the Restatement Second to be the most appropriate, because it is the only framework that accords any substantial weight to the parties' choice, as I discuss below.

has some substantial connection to the parties or the transaction, or to situations in which the parties have some other reasonable basis for their choice, and in which enforcement of the chosen law will not defeat an important policy of the law of the state that would otherwise apply. (See, e.g., *Ashland Chemical Co.* v. *Provence, supra,* 129 Cal.App.3d at p. 794; *Gamer* v. *duPont Glore Forgan, Inc., supra,* 65 Cal.App.3d at pp. 287-289.)

Application of these standards to this case demonstrates that the parties' choice of Hong Kong law governs Seawinds' cause of action for breach of the implied covenant of good faith and fair dealing. As I shall explain, enforcement of the choice-of-law clause here is appropriate because Hong Kong has a substantial connection to the parties and enforcement of the clause will not defeat an important policy of the law of California, the state whose law would otherwise apply.

C. *Substantial Relationship*

As noted above, the purpose of requiring that the parties or the contract have some substantial relationship to the chosen state is to assure that the parties have not selected the chosen state's law to avoid the application of the law of a particular state to their transaction by stipulating to the law of a state that has no interest in having its law applied. (See *Seeman* v. *Phila. Warehouse Co.* (1927) 274 U.S. 403, 408 [71 L.Ed. 1123, 1126-1127, 47 S.Ct. 626]; *Mencor Enterprises, Inc.* v. *Hets Equities Corp., supra,* 190 Cal.App.3d at p. 437 [235 Cal.Rptr. 464]; see generally *Woods-Tucker Leasing Corp., etc.* v. *Hutcheson-Ingram* (5th Cir. 1981) 642 F.2d 744, 750-751.) The "substantial relationship" requirement guards against purposeful evasion of a state's laws.[9]

In this case, the "substantial relationship" requirement is satisfied. The shareholders' agreement, which is incorporated as a part of Seawinds's amended complaint, shows that Seawinds itself is incorporated under the laws of Hong Kong and has a registered office there. Moreover, one of the nine shareholders that is a party to the agreement (Red Coconut Trading Co.)

---

[9]As an alternative, a party seeking enforcement of a contractual choice-of-law clause may also show that there is, in the language of the Restatement Second of Conflict of Laws, some "other reasonable basis for the parties['] choice . . . ." (Rest.2d Conf. of Laws, § 187, subd. (2)(a).) Comment f to section 187 of the Restatement Second provides this illustration:

"For example, when contracting in countries whose legal systems are strange to them as well as relatively immature, the parties should be able to choose a law on the ground that they know it well and that it is sufficiently developed. For only in this way can they be sure of knowing accurately the extent of their rights and duties under the contract. So parties to a contract for the transportation of goods by sea between two countries with relatively undeveloped legal systems should be permitted to submit their contract to some well-known and highly elaborated commercial law."

also is incorporated under the laws of Hong Kong and has a registered office there. "If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice." (*Consul Ltd.* v. *Solide Enterprises, Inc.*, *supra*, 802 F.2d at p. 1147.)

Seawinds contends, however, that the parties and the contract subject matter have contacts with California that are far more extensive than those with Hong Kong. In its amended complaint, Seawinds alleged that its principal place of business was in Redwood City, California; that Nedlloyd "transacted a substantial amount of business" in California; and that Nedlloyd committed in California the acts alleged in the complaint.[10] But when, as here, the parties have chosen the law of a particular state to apply to their contract, the test is not whether another state has a more significant or substantial connection to the parties or the transaction; rather, the test is whether there is a substantial connection with the chosen state. (See *Gamer* v. *duPont Glore Forgan, Inc.*, *supra*, 65 Cal.App.3d at pp. 288-289.) In this case, there is.

Once a court has concluded that the parties or the transaction have a substantial connection to the chosen state or there is some other reasonable basis for the parties' choice, the next step in analysis of a contractual choice-of-law provision is to determine whether enforcement of the provision will defeat an important policy of the state whose law would apply in the absence of a choice by the parties.

D. *Nature and Strength of State's Interest*

As I have explained, California's rule that application of the chosen law must not violate a strong policy of the state whose law would otherwise apply is similar to the Restatement Second of Conflict of Laws' "fundamental policy" rule. That rule provides that the law of the state chosen by the parties will be applied unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [section] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." (Rest.2d Conf. of Laws, § 187, subd. (1)(b).) Under section 188 of the Restatement Second, the state of the applicable law is the state that has "the most significant relationship to the transaction and the parties . . . ." (Rest.2d Conf. of Laws, § 188, subd. (1).)

---

[10]Seawinds argues that these contacts are shown by a declaration of its managing director, Bengt Henriksen. As noted earlier, evidentiary submissions are not cognizable at the pleading stage. This is true even when, as here, the evidentiary submissions are contained in a declaration that was part of the record in a prior lawsuit. Accordingly, I decline to consider Henriksen's declaration.

In this case, the parties agree that in the absence of a choice-of-law clause, California law would apply. I assume for argument's sake that this is correct. Under the Restatement Second of Conflict of Laws, then, the task is to decide whether California's interest in determining the particular issue is materially greater than Hong Kong's interest and, if so, whether application of Hong Kong's law would be contrary to a fundamental policy of California. Because, as I explain below, California's interest in enforcing its substantive law is not materially greater than Hong Kong's, I need not reach the fundamental policy issue.

I first assess the nature and strength of California's interest in applying its substantive law to the transaction at issue here. California's interests, however, are not confined to those expressed in its substantive contract rules. As I mentioned earlier, California also has a significant interest in respecting and promoting party autonomy in matters affecting the interpretation and enforcement of contracts. When the parties have by contractual stipulation chosen to have their agreement governed by a law other than California's, our state's separate interests in enforcing its substantive law and in respecting party autonomy are placed in competition with each other. Therefore, to determine California's actual interest in applying its law to override the parties' choice-of-law agreement, I analyze both of the relevant California interests, and then weigh the one against the other.

First, I assess the strength of the state's interest in enforcing the legal rule at issue in this particular case. As mentioned earlier, California law deems every contract to contain an implied-in-law duty of good faith and fair dealing. Our state's law has long recognized this obligation (see, e.g., *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665]); it has also been adopted by the Restatement Second of Contracts (Rest.2d Contracts, § 205) and by the majority of American jurisdictions (see *Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d 654, 683 [hereafter *Foley*]). California courts have enforced the implied covenant of good faith and fair dealing in a variety of circumstances, including insurance contracts, employment contracts, contracts to sell real property, and ordinary commercial contracts. This court observed in *Foley*: "Initially, the concept of a duty of good faith developed in contract law as 'a kind of "safety valve" to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language.' [Citations.]" (*Id.* at p. 684.)

This court has also recognized, however, that breach of the implied covenant has legal significance that varies with the context of the contract. For example, this court has held that breach of the covenant of good faith by

an insurer gives rise to tort remedies, which may include punitive damages. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819 [169 Cal.Rptr. 691, 620 P.2d 141] (hereafter *Egan*).) On the other hand, we have declined to extend tort remedies for breach of the implied covenant to breaches of employment contracts. (*Foley, supra,* 47 Cal.3d 654.)

In *Egan*, the court emphasized the "inherently unbalanced" relationship of insurer and insured, and observed that the "adhesive nature of insurance contracts places the insurer in a superior bargaining position." (*Egan, supra,* 24 Cal.3d at p. 820.) The court pointed out that insurers are purveyors of a vital, quasi-public service, and that insureds do not seek to obtain commercial advantage but protection against calamity. (*Id.* at pp. 819-820.) The court also observed that " '[i]nsurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust.' " (*Id.* at p. 820.)

By contrast, in *Foley* the court reasoned that there were "significant differences" between employer-employee relationships and insurer-insured relationships that justified allowing tort remedies in the one context but not the other. (*Foley, supra,* 47 Cal.3d at p. 689.) The court recognized, among other considerations, that "the role of the employer differs from that of the 'quasi-public' insurance company" because the employer "is not providing a public service." (*Id.* at p. 692.) The court stressed that, as compared to the insurance situation, the interests of employer and employee are "most frequently in alignment," and thus "the need to place [additional] disincentives on an employer's conduct . . . simply does not rise to the same level as that created by the conflicting interests at stake in the insurance context." (*Id.* at p. 693.) And the court underscored that "predictability of the consequences of actions related to employment contracts is important to commercial stability." (*Id.* at p. 696.)

These distinctions indicate that although the state has an interest in enforcing the implied covenant of good faith and fair dealing in every contract, the state's interest is stronger when the covenant acts to protect weaker parties in an inherently unbalanced relationship—typically a relationship in which one party enjoys a superior bargaining position so that it is able to dictate the terms of the agreement—and the weaker party seeks not profit but an essential service. Conversely, the state's interest in enforcing the implied covenant is less compelling when the parties are sophisticated business entities of apparently equal bargaining power that have struck a bargain that is tailored to their particular needs, evidently negotiated and drafted by experienced counsel, and made for no motive other than profit.

This case concerns a contract between multiple sophisticated business entities engaged in transoceanic shipping; the shareholders' agreement is not

a standard form contract, but on its face is drawn to meet the particular needs of the parties, who contemplated large-scale capital investment; commercial advantage was the entire motive behind the contract; and Seawinds seeks damages of $50 million in lost profits for the alleged breaches of the contract's express terms and the implied covenant. Under these circumstances, I have no difficulty concluding, even at the pleading stage, that California's interest in enforcing the implied covenant of good faith and fair dealing is considerably less compelling here than in those contexts in which the covenant acts to protect parties with little bargaining power who seek advantages other than profit.

But this does not end the inquiry into California's interest. There is another interest of California that is implicated: respecting and enforcing party autonomy.

As I have shown, the value served by enforcing a choice-of-law provision is that of party autonomy. Party autonomy itself serves the important and closely related goals of protecting the parties' justified expectations, and promoting predictability. Generally, these goals are important in every type of contract. But they are not of equivalent importance in every type of contract. Predictability has special importance in the commercial context. This court observed in *Foley*: "[P]redictability about the cost of contractual relationships plays an important role in our commercial system." (*Foley, supra,* 47 Cal.3d at p. 683.)

Nedlloyd argues that the needs for predictability and protection of the justified expectations of the parties possess even greater force in the international business context. The United States Supreme Court has endorsed this position in a closely related context, stating that a choice-of-forum provision is "an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." (*Scherk* v. *Alberto-Culver Co.* (1974) 417 U.S. 506, 516 [41 L.Ed.2d 270, 279, 94 S.Ct. 2449]; accord *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 9, 15-16 [32 L.Ed.2d 513, 519-520, 523-524, 92 S.Ct. 1907].) As the high court has observed: "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms . . . ." (*The Bremen* v. *Zapata Off-Shore Co., supra,* 407 U.S. at p. 9 [32 L.Ed.2d at pp. 519-520.) Similarly, due respect by California courts for contractual choice-of-law provisions will assist California's resident businesses and industries to expand and prosper.

The desirability of recognizing the international aspects of commercial transactions is underscored when one considers the accelerating frequency of such transactions. "In the past few decades, there has been a dramatic increase in the volume and complexity of transactions with transnational elements, especially business and commercial activity. . . . [T]ransactions with international elements are now routine." (Chow, *Limiting Erie in a New Age of International Law: Toward a Federal Common Law of International Choice of Law, supra,* 74 Iowa L.Rev. 165, 192-193 (fns. omitted).) As I have noted at the outset, California occupies a position of leadership in international trade,[11] and it is in the interest of this state and its residents that transactions with international aspects not be discouraged.

The reasons for giving effect to the parties' choice of law are compelling when the courts are concerned with a sophisticated transnational business transaction. When, as here, the parties to a lawsuit are large-scale international business entities of apparently equal bargaining power seeking commercial advantage, the case does not implicate the concerns the law properly has for individuals and smaller entities that may be offered contractual terms for a vital service or product on a "take-it-or-leave-it" basis by a party with greater economic power.

In this case, California's interest in respecting the parties' choice-of-law agreement is at least as strong as its interest in applying its substantive law to the transaction at issue. Because, on balance, honoring the parties' choice of governing law will serve California's interests as well or better than overriding that choice, California should not be deemed to have a materially greater interest than Hong Kong in determining whether the amended complaint states a cause of action for breach of an implied covenant of good faith and fair dealing.

Accordingly, consideration of the pertinent factors in this context leads me to conclude that California has no substantial interest in applying its law to Seawinds' cause of action for breach of the implied covenant of good faith and fair dealing.

---

[11]California leads the United States in exporting, accounting for one out of every seven export dollars. "In 1991, California exported over $63 billion in goods . . . . California ports handled two-way trade valued at nearly $175 billion." (Cal. State World Trade Com., 1991 Cal. Trade Highlights, p. 1.) Between 1987 and 1990, exports increased by an average of 20 percent per year. Exports represented "approximately 60 percent of the state's real economic growth in 1991." (*Ibid.*) Foreign investment in California exceeded $60 billion in 1989 (the latest year for which figures are available), and total employment in California attributable to foreign investment was 496,400 in 1989. (*Id.* at p. 2.)

### III. BREACH OF FIDUCIARY DUTY

#### A. *Existence of a Conflict*

As I have mentioned, one of the consolidated proceedings before this court involves a ruling on a demurrer to the original complaint, while the other arises from a ruling on a demurrer to the amended complaint. In its demurrer to the original complaint, Nedlloyd contended that if Hong Kong law applied, both the implied covenant and the fiduciary duty causes of action failed. In its demurrer to Seawinds' amended complaint, Nedlloyd renewed its argument that Hong Kong law applied to the breach of implied covenant cause of action, but did not renew the contention that Hong Kong law applied to the breach of fiduciary duty cause of action. The amended complaint superseded the original complaint (see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1114, p. 532), and a reviewing court ordinarily will not consider the sufficiency of a superseded pleading (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362]; *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311 [70 Cal.Rptr. 849, 444 P.2d 481]).

Nevertheless, the question whether Hong Kong law applies to the fiduciary duty cause of action was properly before the trial court and the Court of Appeal, and was ruled on by those courts. The parties dispute the issue in this court; if the issue is not addressed in this proceeding, it is virtually certain it will be raised again. Inevitably, resolution of the question whether Hong Kong law governs the fiduciary duty cause of action will be required at some stage in these proceedings. Thus, it is procedurally appropriate to consider the issue here, and doing so serves the interests of judicial efficiency. (See *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 256-257 [53 Cal.Rptr. 673, 418 P.2d 265].) But, because the original complaint has been superseded by the amended complaint, I will analyze the breach of fiduciary duty cause of action as pleaded in the amended, not the original, complaint.

In its amended complaint, Seawinds set forth two bases on which Nedlloyd owed it a fiduciary duty. First, Seawinds alleged that Nedlloyd was the controlling shareholder of the corporation, though not a majority shareholder, and actually exercised control. Second, Seawinds alleged that it "at all times reposed special trust and confidence in Nedlloyd," relying on

Nedlloyd's expertise in the shipping industry, and Nedlloyd accepted this trust and confidence and undertook to act on Seawinds' behalf.[12]

As to the second or "trust and confidence" theory of fiduciary duty (a theory not alleged in the original complaint), the record contains no evidence of the content of Hong Kong law. Because the record fails to demonstrate that on this subject Hong Kong law and California law differ in any material way, no choice-of-law issue is presented at this stage of the proceedings by the "trust and confidence" theory of fiduciary duty.

With respect to the first or "controlling shareholder" theory of fiduciary duty, the record does contain some evidence of the content of Hong Kong law. Does this evidence demonstrate a material difference between California law and the law of Hong Kong?

The declaration of Nedlloyd's expert on Hong Kong law, William Catley, states: "Under Hong Kong law, a shareholder of a company owes no fiduciary duty to that company." Seawinds' expert on Hong Kong law, Geoffrey Miles, did not dispute this assertion in his declaration, although he had the opportunity to do so. Therefore, it is reasonable to conclude that if Hong Kong law governs Seawinds' cause of action for breach of fiduciary duty, to the extent the cause of action is premised on the "controlling shareholder" theory, it is barred.

California law, however, is to the contrary. In *Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 109-111 [81 Cal.Rptr. 592, 460 P.2d 464], this court held that majority or controlling shareholders owe a fiduciary duty to minority shareholders and to the corporation itself. (See *Heckmann* v. *Ahmanson* (1985) 168 Cal.App.3d 119, 133, fn. 7 [214 Cal.Rptr. 177]; 12B Fletcher, Cyclopedia of the Law of Private Corporations (1984 rev.) § 5811, pp. 155-156.)

Under California law, Seawinds is entitled to proceed on its breach of fiduciary duty cause of action against Nedlloyd in the latter's capacity as an alleged controlling shareholder. Under Hong Kong law, however, Seawinds is not entitled to proceed against Nedlloyd as a controlling shareholder as defined by Hong Kong law. Accordingly, a conflict of law exists.

### B. *Scope of the Choice-of-law Clause*

As I noted earlier, the choice-of-law clause of the shareholders' agreement provides, in its entirety: "This Agreement shall be governed by and construed in accordance with Hong Kong law and each party hereby irrevocably

---

[12]In the original complaint, Seawinds alleged only that "the [s]hareholders' [a]greement created a fiduciary relationship" between it and Nedlloyd.

submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts." The parties dispute whether, under our precedents, this clause encompasses noncontractual causes of action.

Nedlloyd contends that the breach of fiduciary duty cause of action comes within the choice-of-law clause, relying on *Smith, Valentino & Smith, Inc.* v. *Superior Court, supra,* 17 Cal.3d 491, 497 (*Smith*). There, this court held that a forum-selection clause in a contract was valid with respect to the contractual cause of action. Turning to the tort causes of action, Justice Richardson wrote for the court: "Smith contends that the clause is limited in its application to breach of contract actions and should not apply to the tort counts in Smith's complaint. These counts (unfair competition and intentional interference with advantageous business relationships) arose directly out of Smith's contractual relationship with [the defendant] and reasonably may be interpreted as falling within the clause which provides for a Pennsylvania forum to litigate 'Any actions or proceedings instituted by . . . [Smith] under this [a]greement with respect to any matters arising under *or growing out of this agreement.* . . .' " (*Ibid.,* original italics.)

By contrast, the choice-of-law clause in the contract here provided only that "[t]his Agreement shall be governed by and construed in accordance with Hong Kong law . . ."; it did not include language comparable to that emphasized by the court in *Smith.* Unlike the forum-selection clause in *Smith,* it cannot be said of the choice-of-law clause in this case that it was clearly intended by the parties to encompass related noncontractual causes of action. Nor, however, can it be said that the choice-of-law clause here was plainly intended to exclude related noncontractual causes of action. Instead, the clause is ambiguous; it is not clear whether the parties intended it to govern related noncontractual causes of action.

Here, the facts alleged to form the basis for the breach of fiduciary duty cause of action are related to those alleged as the basis for the breach of contract and implied covenant causes of action, which are governed by the parties' choice of Hong Kong law. Under all three causes of action, Seawinds alleged that Nedlloyd engaged in a course of conduct aimed at forcing Seawinds out of the transpacific container shipping business so that it might obtain commercial advantage.

Because the choice-of-law clause in the parties' contract is ambiguous regarding whether it was intended to govern noncontractual causes of action, Seawinds should have alleged in the complaint its interpretation of the clause. (E.g., *Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1561 [260 Cal.Rptr. 237] [" ' "if the instrument is ambiguous, the pleader must allege the meaning he ascribes to it" ' "]; accord,

*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749-750 [200 Cal.Rptr. 605]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 477, p. 514.) Seawinds did not do so.

This pleading omission, however, is not fatal. The statutory rule is that pleadings are to be liberally construed. (Code Civ. Proc., § 452.) When a plaintiff fails to allege the meaning of an ambiguous contractual provision, but the contract containing the provision is, as in this case, set forth in an attachment to the complaint, the courts will construe the contract to determine whether it is reasonably susceptible to an interpretation sufficient to sustain the cause of action. (*Beck* v. *American Health Group Internat., Inc.*, *supra*, 211 Cal.App.3d at p. 1561; *Hillsman* v. *Sutter Community Hospitals*, *supra*, 153 Cal.App.3d at p. 750.) As I have explained, the choice-of-law provision in this case is ambiguous. It necessarily follows that the clause is reasonably susceptible of an interpretation that does not encompass noncontractual causes of action; therefore, this court is required to so construe it at the pleading stage. Any other approach would be inconsistent with the settled rules of pleading.

Accordingly, because the choice-of-law clause in this case does not unambiguously extend to noncontractual causes of action, it should not be applied by the trial court in determining whether the plaintiff has stated a cause of action for breach of fiduciary duty.[13]

## C. Defects of the Majority's Approach

In an earlier part of this opinion, I have emphasized the particular need for predictability and protection of the parties' justified contractual expectations in the commercial context. Until today, California law governing contractual choice-of-law and choice-of-forum provisions served that need. Sophisticated commercial parties who desired choice-of-law and choice-of-forum provisions to control all related contractual and noncontractual aspects of their relationship could achieve their aim by using clauses that resembled those this court enforced in *Smith*, *supra*, 17 Cal.3d 491, governing "any

[13]Nedlloyd also contends that the "internal affairs" doctrine compels a decision in its favor on the breach of fiduciary duty cause of action. The doctrine's status in California is doubtful; it has been criticized as inconsistent with the state's general approach to resolving conflict-of-laws questions. (*Wilson* v. *Louisiana-Pacific Resources, Inc.* (1982) 138 Cal.App.3d 216, 224 [187 Cal.Rptr. 852].) But even assuming the internal affairs doctrine should be followed in California, resolution of the issue under that doctrine would require a determination whether California or Hong Kong has a "more significant relationship" to the parties under section 306 of the Restatement Second of Conflict of Laws. This question is essentially factual, and thus ill-suited to resolution at the pleading stage. For this reason, and because Nedlloyd failed to raise the internal affairs doctrine in the trial court or in the Court of Appeal, I decline to address it here.

matters arising under or growing out of the agreement." Other sophisticated parties who desired more narrow clauses could draft specific clauses suited to the parties' needs in the expectation that those clauses would be enforced as they were intended.

But under the majority's approach, as I understand it, when two commercial entities agree to a choice-of-law clause in a contract, as a matter of law the clause applies to all conceivably related noncontractual causes of action, regardless of any ambiguous language in the clause or of the parties' actual intent regarding its coverage. The party resisting application of the choice-of-law clause will have no opportunity to show that it was intended to apply only to contractual causes of action. This rigid rule has, in my view, serious defects.

The majority ignores the most fundamental statutory command of contract law interpretation: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636; see Code Civ. Proc., § 1859 ["In the construction of a statute the intention of the Legislature, and in the construction of an instrument the intention of the parties, is to be pursued, if possible; . . ."].)

It is not at all difficult to foresee situations in which contracting parties intend a choice-of-law clause such as the one at issue here to govern only contractual causes of action. A party could demonstrate such intent by showing, for example, that the scope of the choice-of-law clause was a subject of negotiation, and that early drafts of the parties' agreement contained a choice-of-law clause similar to the clause in *Smith, supra,* 17 Cal.3d 491, while the final version, after negotiation, more resembled the clause at issue here. Such documentary evidence of negotiation that successively narrowed the scope of the clause would strongly indicate that the parties intended the clause to apply only to contractual causes of action.

But the majority would simply disregard the parties' intent even in cases in which it could be demonstrated that the parties intended the choice-of-law clause *not* to apply to noncontractual causes of action. The majority would do so in direct violation of the command of Civil Code section 1636, which requires the courts to ascertain and give effect to the intention of the parties. And the majority would do so in the name of "certainty and predictability," while, ironically, defeating the expectations of the parties that the choice-of-law clause would, certainly and predictably, apply only to contractual causes of action.

It is unrealistic to conclude that the choice-of-law clause in this case is not ambiguous. Certainly, reasonable minds may differ as to whether the clause

in this case, which states only that "[t]his Agreement shall be governed by and construed in accordance with Hong Kong law . . . ," should be interpreted to cover noncontractual causes of action. Indeed, the ambiguity in the scope of this clause proceeds not so much from its language as from its context. Taken without reference to context, the clause *is* unambiguous, but not in the manner suggested by the majority. Because the clause refers only to "this Agreement," and not, like the similar clause at issue in *Smith*, to "matters arising under *or growing out of this agreement. . . .*' " (*Smith, supra,* 17 Cal.3d at p. 497 (italics in original)), it appears on its face not to apply to noncontractual causes of action.

Given the context of the agreement, the parties may well have intended a clause that would assure that all their disputes would be governed by Hong Kong law, but simply have failed to make this explicit. On the other hand, the parties may well have intended what Justice Panelli, in his separate opinion, joined by Justice Mosk, assumes they intended: that only their contract disputes be governed by Hong Kong law. Indeed, the very fact that Justices Panelli and Mosk disagree with the majority regarding the meaning of the clause, and that both the majority and these two justices find the clause clear, but conclude it has opposite meanings, ironically and convincingly demonstrates that the clause *is* ambiguous.

Even under circumstances in which the ambiguity arises more from context than language, extrinsic evidence is admissible to show the meaning the parties intended. The majority mistakenly assumes that, because the term "this Agreement" means to four members of this court "this Agreement and all related controversies," it could reasonably have no different meaning to the parties or anyone else. Outside of the choice-of-law area, however, the courts of this state have rejected such a narrow view of meaning. As Chief Justice Traynor put it in the landmark case of *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38-39 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373] (*Pacific Gas*): "[T]he meaning of a writing '. . . can only be found by interpretation in light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended. . . .' [Citations.]"

Under the majority's approach, "contractual obligations flow, not from the intention of the parties but from the fact that they used certain magic words." (*Pacific Gas, supra,* 69 Cal.2d at p. 38.) The majority's primitive "magic words" approach is inconsistent with statutory rules of contract interpretation.

The majority's approach is also inconsistent with the approach taken by Justice Richardson in his thoughtful opinion for this court in *Smith, supra,* 17 Cal.3d 491. There, Justice Richardson interpreted the meaning of a choice-of-forum clause by focusing on the particular language chosen by the parties, as the language reflects the parties' intent. Without admitting it, the majority has abandoned this traditional and sound approach.

## IV. CONCLUSION

Parties enter into contracts to allocate risks and to bring certainty, order, and predictability to their mutual relations. One of the principal aims of contract law is to assist contracting parties in achieving this objective by making the outcome of legal disputes clear and predictable. When the parties are residents of different jurisdictions, or their activities span state or national borders, the potential application of the varying legal rules of different jurisdictions undermines the parties' efforts to avoid unexpected legal consequences. When the parties have anticipated and provided for this problem by including in their agreement a choice-of-law provision, courts should generally give effect to the provision. In so doing, courts protect the parties' reasonable expectations and establish a legal climate in which commerce can flourish.

In this case, the parties have elected to have their agreement governed by Hong Kong law. Applying the test articulated in the Restatement Second of Conflict of Laws, I conclude, like the majority, that Hong Kong law, the law expressly chosen by the parties, should be applied to Seawinds' contractual cause of action for breach of the implied covenant of good faith and fair dealing. But the goal of protecting contracting parties' reasonable expectations is not served by applying Hong Kong law to Seawinds' noncontractual cause of action for breach of fiduciary duty. Absent extrinsic evidence that the parties intended a broader application of their choice-of-law provision, the choice-of-law provision is most reasonably interpreted as applying only to contractual causes of action. Unlike the majority, therefore, I conclude that the trial court should not apply Hong Kong law to determine whether Seawinds has stated a cause of action for breach of fiduciary duty.