SHAW, Collector, v. DIX et al.

(Circuit Court, D. Maryland. January 22, 1896.)

CUSTOMS DUTIES—DESTRUCTION OF SPECIFIC ITEMS OF INVOICE—COCOANUTS IN BULK.

    Two cargoes of cocoanuts in bulk were imported, invoiced at specified prices per thousand. On discharging, the number of cocoanuts fell short of the number stated in the invoice, the missing quantity appearing to be contained in a mass of broken and rotten cocoanuts not countable. *Held*, that such shortage, resulting from the entire destruction of specific items of the invoice, was not a damage to the merchandise, under section 23 of the act of June 10, 1890, for which no allowance could be made unless it amounted to 10 per cent. of the total quantity of the invoice, but that duties could be exacted only° on the number of cocoanuts actually received as merchandise, excluding the worthless debris. U. S. v. Bache, 8 C. C. A. 258, 59 Fed. 762, distinguished.

Appeal by the United States from a Decision of the Board of General Appraisers Reversing a Decision of the Collector of the Port of Baltimore.

William L. Marbury, U. S. Dist. Atty., and H. Snowden Marshall. Asst. U. S. Dist. Atty., for the collector.

M. Starr Weil, for appellees.

MORRIS, District Judge. Dix & Wilkins, the appellees, imported into the port of Baltimore, in 1884, two cargoes of cocoanuts in bulk, invoiced at specified prices per thousand, according to sizes. On· the discharge of the cargoes the number of cocoanuts fell short of the number stated in the invoices, and this shortage the government officers accounted for by an estimate that the missing quantity was contained in a mass of broken and rotten cocoanuts, not countable. This mass of offensive, decaying vegetable matter was of no value, and the importers were required to have it carted off and thrown away. The collector exacted duties on the whole number of cocoanuts specified in the invoices, deciding that section 23 of the act of June 10, 1890, was applicable, and that under the ruling in U. S. v. Bache, 8 C. C. A. 258, 59 Fed. 762, the shortage was a damage to the merchandise for which no allowance could be made, as it did not amount in either case to 10 per cent. of the total quantity of the in-

voice, and there could, consequently, be no abandonment to the United States, as required by that section. The importers duly protested, claiming that they asked for no allowance for any damage to the cocoanuts which actually arrived, and desired to pay for all cocoanuts discharged from the vessels, whether sound or damaged, but that the mass of matter which remained after discharging the cargo represented cocoanuts which, having rotted and been broken up during the voyage, ceased to be merchandise of any kind, and should be treated as lost or destroyed by accident during the voyage. Gen. Reg. §§ 906, 922.

It is quite true that the allowance for damage to imported goods is expressly regulated by section 23 of the act of June 10, 1890; but it is true now, as it was before that act was passed, that duty is not to be assessed on an article which does not arrive in this country. Marriott v. Brune, 9 How. 619. As to perishable fruits, imported in boxes, cases, or bags, and of which some in each package decay during the voyage, it may be held that the loss cannot be ascertained except by an estimate of the loss of value to each package by the decay of some of its contents, and as the invoice would call for so many packages, it might fairly be said that all the packages were imported, but in a damaged condition, and of an impaired value. In such a case, no doubt, section 23 would apply. But if any packages were broken up, and the contents reduced to a worthless mass, it could not be fairly said that those packages arrived at all, or that duty could be exacted in respect to them. With respect to cocoanuts imported in bulk, it would appear that those which rotted and were broken up on the voyage, and became mere worthless debris in the hold of the ship, are a total loss. They are not a damage to the value of what remains, but they lessen the number which the importer receives. If this worthless material could be separated from the cargo while at sea, and thrown overboard, the importer would be better off, because he would be saved the expense of having the stuff hauled away to the dump after the cargo is discharged.

In U. S. v. Bache, 8 C. C. A. 258, 59 Fed. 762, the facts presented raised a very different issue. The importation was glass in cases or packages, and a considerable breakage of glass in the cases occurred during the voyage. The cases all arrived. The contents were not destroyed, but were damaged. It was clearly a case within the language of section 23, and no question would have arisen but for the fact that "broken glass fit only to be remanufactured" was by law exempt from duty, and admitted free. The importer claimed that as, during the voyage, a portion of each case became broken glass, its character as merchandise was changed, and it became an article specifically exempted from duty, and entitled to come in free, and that it made no difference that the dutiable and nondutiable goods happened to come into this country in the same box. He claimed that he was chargeable with duty on the merchandise as it came into this country and not as it was when it was put aboard the ship in the foreign port. It was held by the circuit court of appeals for the Second circuit that, congress having enacted a general statutory system for the ascertainment of the damage to imported goods, and for allow-

ance in respect to such damage, it could not be supposed that damages to importations of glass were to be exempted out of that general system simply because importations of broken glass had been put on the free list, and held that there was nothing indicating an intention by congress to take the one article of glass out of the general system. The general system provides that, if the damage amounts to 10 per cent. of the total invoice, the importer may abandon any portion of the invoice and be relieved from the duties on the portion so abandoned.

I think it is clear that the board of general appraisers was right in holding, in deciding the present case, that this section contemplated a case where there remains something to be abandoned, in the sense of being impaired in value, but that it is not applicable to a case where specific items of the invoice have been so entirely destroyed as that, in reckoning up to the items of the invoice, they cannot be counted, and where the destroyed items are valueless, and there remains nothing which can be the subject of abandonment. Section 23 of the act of 1890 is not inconsistent with the general provisions of section 2921 of the Revised Statutes, nor with sections 906 and 922 of the General Regulations, providing that, if the quantity which arrives is less than the invoice, there may be an allowance for the deficiency. In the present case it was not possible for the appraisers to say what number of cocoanuts was contained in the mass of debris remaining after the discharge of the cargo. It was estimated that this mass contained the difference between the number discharged and the number stated in the invoice. But the number specified in the invoice is not the result of an accurate count, the nuts being often brought on board in small boats through the surf, so that it is not possible to say with any accuracy what number the mass of debris did represent. It is quite manifest that there is no ground for the contention that section 23 is applicable to this case. The decision of the board of general appraisers is sustained.