[Crim. No. 1429. First Appellate District, Division One.—December 19, 1927.]

In the Matter of the Application of E. R. GUNDELFINGER for a Writ of Habeas Corpus.

McKinstry, Haber & Firebaugh for Petitioner.

Mathew Brady, District Attorney, I. M. Golden, Assistant District Attorney, J. A. Pritchard, John J. O'Toole, City Attorney, and Henry Heidelberg, Deputy City Attorney, for Respondents.

KNIGHT, J.—Petitioner was arrested for violating the provisions of a municipal ordinance, and seeks to be discharged from custody on a writ of *habeas corpus*.

The city and county of San Francisco maintains an ordinance imposing a license tax upon various classes of business conducted within its boundaries. Section 83 thereof reads as follows: "Every person, firm, or corporation engaged

in the business of buying or selling mining stocks, bonds, state, county or municipal stocks or bonds, or stocks of incorporated companies or evidences of indebtedness of private persons or of incorporated companies, directly or on margin, shall pay a license . . . ,'' the amount of which varies from twelve to fifty-two dollars a quarter, according to the amount of commissions or gross profits earned by the business. Section 90 declares a violation of any of the provisions of said ordinance to be a misdemeanor. The complaint herein charged that petitioner did wilfully and unlawfully ''engage in the business of buying and selling bonds, stocks, and evidences of indebtedness. of private persons and of incorporated companies without having obtained the municipal license so to do,'' in violation of the provisions of sections 83 and 90 of said ordinance.

The charter of said city contains the following provision: ''Subject to the provisions, limitations and restrictions in this charter contained, the board of supervisors shall have power: 15. To impose license taxes and to provide for the collection thereof; *but no license taxes shall be imposed upon any person who, at any fixed place of business in the city and county, sells or manufactures goods, wares or merchandise,* except such as require permits from the board of police commissioners as provided in this charter.'' (Article II, chapter II, section 1, subdivision 15.) (Italics ours.)

■ Petitioner contends that the phrase ''goods, wares or merchandise'' as used in the foregoing charter provision includes every species of personal property, that is, all property which is not real estate or freehold; and that therefore, since bonds, stocks, and evidences of indebtedness are deemed to be personal property, section 83 of the ordinance, which imposes a license tax upon the business of buying and selling such property, is violative of the italicized portion of the charter provision above quoted, and consequently void.

We are of the opinion that the unlimited construction petitioner would have placed upon the phrase ''goods, wares or merchandise'' cannot be sustained. ■ One of the fundamental rules of statutory construction is that the words of a statute must be interpreted in their usual, ordinary, and popular sense, that is, according to their common acceptation, unless the context of the statute shows that they

are used in a technical sense (*Quigley* v. *Gorham,* 5 Cal. 418 [63 Am. Dec. 139]; *Farrell* v. *Board of Trustees,* 85 Cal. 408 [24 Pac. 868]; *Directors of Fallbrook Irr. Dist.* v. *Abila,* 106 Cal. 355 [39 Pac. 794]; *Ex parte Galivan,* 162 Cal. 331 [122 Pac. 961]), and where words having a technical as well as a popular meaning are used, the courts will accord to them their popular signification (*Perrin* v. *Miller,* 35 Cal. App. 129 [169 Pac. 426]). We are dealing here with the provisions of a municipal charter framed by a board of freeholders and approved by a vote of the people, and it is therefore only reasonable to assume that if it had been intended that all fixed places of business, selling, or manufacturing any species of personal property, should be exempt from the operation of said license tax, the term "personal property" would have been used in the enactment of said exemption clause instead of the phrase "goods, wares or merchandise." Furthermore, the exemption provided being a privilege conferred upon a certain class of persons by the supreme law-making power of the city, which contains no element of contract and grants no vested rights, is subject to change at any time by charter amendment without violating any right of which such persons could be heard to complain; and therefore said exemption clause should be construed with strictness (*Ransome-Crummey* v. *Bennett,* 177 Cal. 560 [171 Pac. 304]).

It is doubtless true that where the question of the application of the statute of frauds is involved, which is not the case here, it is held generally that the words constituting the phrase "goods, wares or merchandise" when taken together are equivalent to the term "personal property" (28 Cor. Jur., p. 726), but it is also held, as petitioner concedes, that where, as here, said phrase is employed in the enactment of taxation laws, it may be used in different senses, and in case of doubt its true meaning must be determined from the context and purposes of the act wherein it is used. (28 Cor. Jur., p. 727; *New England etc. Co.* v. *Commonwealth,* 195 Mass. 385 [11 Ann. Cas. 678, 81 N. E. 286].) In any event, since a phrase of restricted meaning was employed in framing said exemption clause, it is not within the power of the courts to extend the scope and operation of said clause by judicially substituting in the place of such restricted phrase a term of

unlimited meaning. Therefore, looking to the context and purposes of the charter provision containing said exemption clause rather than to the numerous conflicting cases upon the subject to be found in other jurisdictions, and interpreting said phrase "goods, wares or merchandise" according to its common acceptation and meaning, we are convinced that in the enactment of said exemption clause the framers of the charter did not intend to include within its scope those places of business like petitioner's, dealing in intangible assets, from which the city otherwise derives no revenue.

The decision rendered in *In re Dees,* 50 Cal. App. 11 [194 Pac. 717], upon which petitioner mainly relies in support of his theory, is not, in our opinion, controlling here, nor do we believe that it has the far-reaching effect petitioner claims for it. There the controversy related to the validity of section 70 of the license tax ordinance of said city and county, which made it unlawful for any person to engage in the business of selling theater tickets at any place other than at the office of the theater without first taking out a ticket peddler's license, which was fixed in the sum of three hundred dollars a month. The facts appearing in the opinion show that petitioner therein was conducting a news-stand in a hotel, selling various articles of goods, wares, and merchandise, and as a part of such business, for the convenience of the guests of said hotel and as a necessary prerequisite to the occupancy of said news-stand, resold theater tickets, charging a premium thereon of twenty-five cents each. The gross sales from the entire news-stand business amounted to no more than six hundred dollars a month. It was held that said section 70 could not be upheld as a valid exercise of police power since it was not based upon any reasonable consideration of the public health, morals or safety, nor of the cost of the police supervision; and that as a revenue measure it was invalid because the license tax of three hundred dollars a month was not based upon any reasonable distinction; that the amount thereof was unfair and oppressive, if not in fact prohibitory; furthermore that under the city charter the board of supervisors, though vested with power to license ticket peddlers, was without power to exact a tax on those selling goods at a fixed place of business and could not enlarge upon its power by de-

claring persons as peddlers who were not such in fact. It will therefore be seen that the questions before the court there were essentially different from those presented here.

However, it having appeared that the resale of theater tickets was only a part of petitioner's main business of selling goods, wares and merchandise at said news-stand, the court, in the determination of the principal issues, quoted excerpts from several cases and cited others arising in foreign jurisdictions holding that the phrase "goods, wares or merchandise" included all species of movable property, from which the court in the Dees case concluded that theater tickets might properly be included within the definition of "goods." But a fair analysis of the decision in the Dees case shows, we think, especially in the light of the fact that all except two of the cases cited therein involved the application of the statute of frauds, that the excerpts quoted were invoked only in an argumentative sense in determining that the single item of property there under consideration, namely, theater tickets, constituted "goods," and were not intended to constitute, as petitioner claims, an abstract adjudication that the phrase "goods, wares or merchandise" as employed in said exemption clause includes every species of personal property. Said decision contains no express declaration to that effect, and acting upon the assumption that the law was not so declared, the city thereafter continued to and does now collect a large revenue from license taxes imposed upon the character of business now under consideration. For the reasons stated, we believe the construction petitioner would have placed upon the effect of the Dees case is untenable, and we are therefore unable to adopt the same.

Nor do we consider that any of the cases which petitioner cites from other jurisdictions, notably the case of *Banta* v. *Chicago*, 172 Ill. 204 [40 L. R. A. 611, 50 N. E. 233], are decisive here. As petitioner concedes, in construing taxation laws "there is not a unanimity on the part of the courts in defining 'goods, wares or merchandise,'" for the reason that the phrase is used in different senses, and in case of doubt its meaning is ascertained from the context and purposes of the act (*New England etc. Co.* v. *Commonwealth, supra*). It may therefore be fairly inferred that the decisions in the cases petitioner cites, as well as

in those which may be found holding to the contrary, were grounded to some extent at least upon the contexts and purposes of the particular acts there considered.

Upon the grounds and for the reasons hereinabove set forth, we conclude that section 83 of said ordinance is not in conflict with the charter provision quoted, and consequently not invalid. The writ is therefore discharged and petitioner is remanded to the custody of the chief of police of said city.

Tyler, P. J., and Cashin, J., concurred.