Common Pleas Court of Hamilton County.

ALVIN BARKER V. CITY OF CINCINNATI.

Decided April 20, 1933.

*Benjamin S. Schwartz,* and *Harry M. Wasserman,* for plaintiff in error.

*H. J. Wernke,* for defendant in error.

DARBY, J.

The plaintiff in error (herein called the defendant) was convicted in the Municipal Court of Cincinnati, and fined for violation of Section 74-200 of the Code of Ordinances of said city.

The ordinance is as follows:

"It shall be unlawful for any person to demonstrate, sell, or offer for sale, goods, wares, or merchandise, in, upon, or from any portion of a building or structure abutting any sidewalk in the congested district which causes or creates such a gathering of persons on said sidewalk as to interfere with pedestrian traffic thereon."

The affidavit upon which the prosecution was based charges that the defendant—

"did then and there unlawfully and wilfully offer for sale certain merchandise, to-wit, racing information, from a

building abutting a certain sidewalk, to-wit, 544 Walnut street, said location being in the congested district, and said offering for sale of said merchandise causing persons to gather on the said sidewalk so as to interfere with pedestrian traffic thereon, contrary, etc."

A number of propositions were made, which will be considered in the following order:

1. That the allegations of the affidavit do not charge a violation of the ordinance.

2. That the evidence does not prove a violation of the ordinance.

3. That the ordinance in question is unconstitutional in that it is discriminatory and unreasonable.

4. The ordinance is invalid for the reason that it was not advertised as provided by law.

### 1-2.

#### DOES THE AFFIDAVIT CHARGE AN OFFENSE?

#### DO THE FACTS PROVEN CONSTITUTE A VIOLATION OF THE ORDINANCE?

These two points will be considered together.

What is charged in the affidavit is that the defendant "did then and there unlawfully and wilfully offer for sale certain merchandise, to-wit, racing information, * * *."

What the ordinance forbids is, "for any person to demonstrate, sell, or offer for sale, goods, wares, or merchandise, * * *."

The question is at once suggested as to whether the affidavit charges an offense in that it charges an offer to sell "certain merchandise, to-wit, racing information." It was proven that what was exhibited on the outside of the building consisted of leaflets and dodgers relating to past races, and containing statements as to the winning horses and the odds on such races.

By any construction that could be given, could racing information be held to be merchandise? There is nothing to indicate that any of these dodgers or leaflets were sold, intended to be sold, or in any sense of the word saleable objects. There is nothing to indicate that they were to be taken from the board by the public.

It was suggested on the trial that it was not necessary

to make a sale, and that would not be disputed, but it was claimed that there was a demonstration by exhibiting these leaflets which brought the case within the ordinance.

By the term "merchandise" is generally understood commodities for sale or barter, and no case can be found even suggesting that information is merchandise, or an article of commerce as that term is generally understood.

The question in the case is: "Does the affidavit setting forth that "merchandise, to-wit, racing information," was offered for sale, and the evidence that nothing but information about past transactions as to races was exhibited, bring the case within the ordinance which forbids the demonstration, sale, or offer for sale, of goods, wares, or merchandise?

The affidavit charges the alleged offense of offering for sale on February 13, 1932; the latest date of any of. the so-called "information" contained on the board related to February 12, 1932.

The words "goods, wares, or merchandise" have a settled legal meaning. Is there anything in the ordinance to indicate that Council meant anything other than it said, or that it meant to expand the use of the words "goods, wares, or merchandise," to other matter not within any definition of that phrase?

In *Wohe* v. *Robertson*, 2 Whart. (Penn.), 155, 162, it is held that lottery tickets transferrable by mere delivery, are within the phrase "goods, wares, or merchandise."

In *Commonwealth* v. *Nax*, 13 Grat. (Va.), 789, 791, it was held that sheet music is within the term, "goods, wares, or merchandise."

In *Smith* v. *Wilcox*, 24 N. Y., 352, it was held that newspapers are within the meaning of the term "goods, wares, or merchandise" prohibiting the sale of such articles on Sunday.

In *Ellison* v. *Bingham*, 38 Vt., 64, 66, it was held that shares of stock are "goods, wares, or merchandise" within the meaning of the Statute of Frauds. See also—*In re Gundelfinger*, 87 Cal. App., 636.

In *Banta* v. *City of Chicago*, 172 Ill., 204, it was held:

"4. The words 'goods, wares and merchandise' used in

an ordinance which defines a broker to be one engaged for a commission in selling goods, wares and merchandise or produce and grain, include within their meaning shares of stock in corporations, and other securities or bonds."

The court on p. 218 expresses a general rule and understanding as to the meaning of these terms when it says:

" * * * but we think the better and more firmly established doctrine is that in the absence of any qualifying or restricting clause, the words 'goods, wares and merchandise' includes and comprehends shares in the capital stock of incorporated companies, and other securities *which are the subject of common barter and sale,* and which are given visible and palpable form by means of certificates, bonds, or other evidence of indebtedness." (Italics ours.)

In *Shaw* v. *Dix,* 72 Fed., 166, it is held that the term "goods, wares and merchandise" within the tariff laws do not include a quantity of material in foreign commerce, which has been broken or rotted during shipment. This case is especially interesting as it indicates that the papers in this case which related to past transactions, could not have been in any sense of the word saleable goods, wares or merchandise. To the same effect as the last case cited is— *Lawder* v. *Stone,* 187 U. S., 281.

In *Beacon Oil Co.* v. *Perelis,* 263 Mass., 288, it is said:

" * * * The right to an invention was not goods, wares and merchandise or a chose in action. It was said by Gray, C. J., in *Somerby* v. *Buntin, supra,* at p. 285, in discussing the question whether a patent was goods, wares and merchandise: 'The words of the statute have never yet been extended by any court beyond securities which are subject of common sale and barter, and which have a visible and palpable form. To include in them an incorporeal right or franchise granted by the government securing to the inventor and his assigns the exclusive right to make, use and vend the articles patented; or a share in that right which has no separate or distinct existence at law until created by the instrument of assignment; would be unreasonably to extend the meaning and effect of words which have already been carried far enough' ".

In *Gretzinger* v. *Wynne Wholesale Gro. Co.,* 183 Ark. 303, it is held that:

"Goods, wares and merchandise in the Bulk Sales Act includes all classes of commodities kept for sale in the usual course of trade."

In *Gitt, Appellant* v. *Hoke, et al*, 301 Penn., 31, the cause arose under the Bulk Sales Act, and it was held strict construction was the rule to be applied in such case, because the statute was in derogation of a common law right to purchase and sale. In the opinion on p. 33, it is said:

"The words 'goods, wares and merchandise' include commodities handled by merchants and dealers in the course of trade; not the unsold products of a manufacturer or a farmer's produce, and the fixtures intended are evidently those which belong to the business, like trade fixtures and not to the building."

In *State* v. *Morgan*, 2 S. D., 32, there was under consideration the applicability of a license law of that state. It was claimed by the defendant that he was immune from prosecution under the state law because he was engaged in interstate commerce. The business in which the defendant was engaged was acting as agent for the Dun Commercial Agency in gathering information relative to dealers engaged in commercial transactions. The court, in holding that the defendant was not engaged in interstate commerce and was subject to the license provided by the state, held (see p. 54 of the opinion):

" * * * Information or intelligence is not an article of 'commerce' in any proper meaning of that word. Neither are they subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them. Neither are they commodities to be shipped or forwarded from one state to another and there put up for sale. The information furnished by mercantile agencies to subscribers for their rating books is like other personal contracts between the parties. It is individual in its character, and has no relation to the general public."

See—*Morelock* v. *Hale*, 138 Tenn., 656, holding that an account for making notes of court proceedings and furnishing typewritten transcripts of the same was neither "goods nor merchandise."

We are dealing here with a criminal ordinance, and the construction to be placed upon it is a reasonable one, and may not be extended to matters which were not clearly within the legislative intent in passing the ordinance. Had

it been the purpose of the Council to include matter such as is involved in this case, it used very inappropriate language to do it.

If the ordinance is to have the interpretation and effect claimed by the city, it would be enforceable not only against the defendant in this case, but against others, including the public press, where resume of daily news is exhibited upon the fronts of buildings in such a way as to attract readers. The case might be stronger against the newspapers for the reason that the brief resume of news which is exposed on their buildings might attract persons to pur-. chase the newspaper, whereas in a case such as the one at bar the articles referred to are not articles of commerce, and there would be no likelihood under any circumstances, that they would be purchased because they all relate to past transactions.

The opinion of the court is that the affidavit does not charge a violation of the ordinance, and the evidence being no broader than the allegations of the affidavit, there was no offense proven.

### 3.

### Is the Ordinance in Question Unconstitutional?

It is claimed on behalf of the defendant that the ordinance is invalid for a number of reasons:

1. That it is unreasonable;
2. That it is discriminatory;
3. That it makes the defendant guilty of an offense, not because of his acts, but because of what the public may do in stopping to inspect matter which is exhibited by way of advertisement in buildings.

It can readily be seen that the ordinance may operate very unequally, and that the same advertisement or exhibition of goods, where persons did not stop to examine it there would be no offense, but if at other times did stop in considerable numbers to inspect the exhibited articles for sale, there would be an offense. Again, two merchants might have the same matter exhibited by way of advertisement for sale, one might draw a crowd and cause congestion and the other not—the latter would be innocent and the former guilty, though their acts would be identically the same.

Merchants have the right to exhibit their goods for sale, and it would seem that they have the right to make such demonstrations of their goods as will bring to them trade, but if this ordinance is valid, all merchants make such demonstrations and offers for sale of their goods at their peril, and if they are fortunate enough to attract a crowd with the likelihood of bringing them business, they are to be penalized because of their good fortune, whereas if there is a congestion upon the streets of sufficient importance or moment to attract the attention of the police, that congestion could be readily removed without harm to any one. The fact that it happens that in this case racing information is what it is said was offered for sale or was demonstrated, does not change the meaning or effect of the law.

The important idea to be kept in mind with reference to an ordinance such as this is not what has been done by way of its enforcement, but what may be done, and how wide scope may be given to an ordinance such as this.

The Supreme Court of Ohio has spoken rather decisively as to the reasonableness of state and municipal laws. In *Froelich* v. *City of Cleveland*, 99 O. S., 376, the court had before it the validity of an ordinance of the city of Cleveland, passed under the Municipal Home Rule provisions of the Constitution. The court say:

"3. The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose and must not interfere with private rights beyond the necessities of the situation."

It is interesting to note that the ordinance in question is a part of the Code regulating traffic on sidewalks. While the object is the regulation of traffic on sidewalks, the means adopted do not seem to be suitable to the ends in view, and do seem to be unduly oppressive upon the merchants who have a right to attract trade by demonstration

of goods, wares and merchandise, in, upon, or from their buildings.

It would seem also that there is an unwarranted interference with private rights beyond the necessities of the regulation of traffic in forbidding merchants to display their wares at their places of business.

In *Disposal Co.* v. *State*, 89 O. S., 230, the Supreme Court in dealing with an indictment for a misdemeanor, had the following to say with reference to the police power of the state and municipal authorities:

"In the exercise of police power, the state and municipal authorities may make all such provisions as are reasonable, necessary and appropriate for the protection of the public health and comfort, and when any such provision has a real and substantial relation to that object, and does not interfere with the enjoyment of private rights beyond the necessities of the situation, every intendment is to be made in favor of its lawfulness."

Since the court is of the opinion that the affidavit does not charge an offense against the ordinance, and the evidence does not prove a violation of the ordinance, it seems unnecessary to decide definitely as to the validity of the ordinance.

4.

It is further claimed that the ordinance is invalid for the reason that it was not published in a newspaper as provided by statute and as held in the case of *Bising* v. *City of Cincinnati*, 126 O. S. 218, (O. L. B. & R. April 10, 1933.)

It is suggested on behalf of the city that this court as a court of review may not consider the question as to the validity of the ordinance, for the reason that no question was made in the court below. It should be kept in mind, however, that a court of review must judicially notice all things which were within the judicial knowledge of the lower court, and it may very well be that since that court was bound to know whether the ordinance was valid or not, this court is required to know the same, but it is not necessary to a determination of this case, to pass upon that question, and it is left for consideration at a later time.

The court is of the opinion that the judgment of the trial court should be reversed and defendant discharged.