323 F.3d 1219
 GRAVQUICK A/S, a Denmark corporation, Plaintiff-Appellant,
v.
TRIMBLE NAVIGATION INTERNATIONAL LIMITED, a California corporation; Trimble Navigation Limited, a California corporation, Defendants-Appellees.
 No. 01-16703.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 3, 2002.
 Filed March 31, 2003.
 
 COPYRIGHT MATERIAL OMITTED Merrill G. Emerick, Anderlini, Finkelstein & Emerick, San Mateo, CA, for the plaintiff-appellant.
 Nicole M. Healy, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Ronald M. Whyte, District Judge, Presiding. D.C. No. CV-00-20304-RMW.
 Before FERGUSON, BRUNETTI, and TASHIMA, Circuit Judges.
 OPINION
 TASHIMA, Circuit Judge.
 
 
 1
 Appellant, Gravquick A/S ("Gravquick"), sued Appellee, Trimble Navigation International Limited ("Trimble"), for violations of the California Equipment Dealers Act ("CEDA"), California Business & Professions Code §§ 22900-22927. Trimble counterclaimed for nonpayment of a debt. The district court granted summary judgment in favor of Trimble on both Gravquick's claim and Trimble's counterclaim. We reverse the former and affirm the latter.
 
 BACKGROUND
 
 2
 Gravquick is a Danish corporation located near Copenhagen that imports construction equipment and products into Denmark for sale in the Danish market. Trimble is a California corporation with its principal place of business in Sunny-vale, California. It manufactures global positioning system devices for agricultural, construction, and navigation applications.
 
 
 3
 On May 26, 1998, Trimble and Gravquick entered into an International Distributor Agreement ("IDA"). The IDA made Gravquick a distributor of Trimble products in Denmark. The IDA was effective for a one-year term beginning on May 26, 1998. Under the terms of the IDA, either party could terminate the agreement without cause by giving 90-days written notice. According to its terms, the IDA would terminate automatically at the end of one year, unless it was extended by mutual consent of the parties. The IDA provided that it would "be governed and construed under the laws of the State of California, United States of America." The choice-of-law provision excepted only the perfection of title for the products sold by Trimble, which was to be governed by the laws of Gravquick's jurisdiction.
 
 
 4
 Trimble apparently delegated the administration and supervision of the IDA to one of its subsidiaries, Trimble Navigation Europe Limited ("TNEL"), located in England. No provision of the IDA authorized such a delegation and Gravquick's consent to it was not sought. Sometime in 1999, TNEL, apparently without any input from Trimble, decided not to renew the IDA. On May 26, 1999, the date the agreement expired, an employee of TNEL notified Gravquick that the IDA would not be renewed.
 
 
 5
 Gravquick sued Trimble, claiming that Trimble violated the CEDA by refusing to renew the IDA without good cause and without proper notice. Trimble counterclaimed for nonpayment of a debt. Trimble moved for summary judgment on both Gravquick's claim and Trimble's counterclaim, contending that the CEDA did not apply to the IDA because Gravquick was a dealer located outside of California and because the decision not to renew was made in England, not California. The district court granted Trimble's summary judgment motion, reasoning that the CEDA did not apply to a decision not to renew that occurred outside of California.
 
 DISCUSSION
 
 6
 A federal court applying California law must apply the law as it believes the California Supreme Court would apply it. Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir.), amended by 136 F.3d 1208 (9th Cir.1997). In the absence of a controlling California Supreme Court decision, the panel must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids. Id.; see also Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1045-46 (9th Cir.2001).
 
 
 7
 The CEDA regulates the business relations between independent dealers of agricultural, utility, and industrial equipment and the manufacturers, wholesalers, and distributors of such equipment. See Cal. Bus. & Prof.Code § 22900. The CEDA regulates, among other things, the termination, cancellation, and non-renewal of dealer agreements. See id. §§ 22902, 22903. Under the CEDA, a supplier may not fail to renew a dealer agreement unless there is cause and the supplier provides the dealer 90 days' written notice. Id. § 22903. Both parties agree that the IDA falls within the literal terms of the CEDA, but disagree about whether the CEDA contains unstated geographical limitations that prevent its application to this case. We hold that it does not contain such limitations.
 
 I Place of Non-Renewal
 
 8
 The district court held that the CEDA did not apply to the non-renewal of the IDA because the decision not to renew was made in England. The court reasoned that applying the CEDA to this termination would constitute extraterritorial application of the CEDA. We disagree.
 
 
 9
 Even though the actual act of deciding not to renew occurred in England, the contract itself was governed by California law. The contract's choice of law clause states that the IDA is to "be governed by and construed under the laws of the State of California...." In Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1154 (1992), the California Supreme Court held that "[t]he phrase `governed by' is a broad one signifying a relationship of absolute direction, control and restraint. Thus, the clause reflects the parties' clear contemplation that `the agreement' is to be completely and absolutely controlled by" the law of the jurisdiction named in the choice of law clause. The breadth of the IDA's choice of law clause indicates that the parties decided that California law was to apply to all aspects of the contract, even termination.[1] Honoring that choice of law does not give extraterritorial application to the statute, even if the contract was performed partially outside of California, so long as the contract itself was properly governed by California law. See Foreman v. George Foreman Assoc., Ltd., 517 F.2d 354, 356 (9th Cir.1975); see also Northrop Corp. v. Triad Int'l Mktg., S.A., 811 F.2d 1265, 1270 (9th Cir.1987), amended, 842 F.2d 1154 (9th Cir.1988) (noting the importance of honoring choice-of-law provisions in international commercial agreements).
 
 
 10
 Trimble concedes that this contract is properly governed by California law. Therefore, applying the CEDA to the termination of this California contract does not implicate issues of extraterritoriality. The district court thus erred in holding that the CEDA does not apply to non-renewals that occur outside of California.[2]
 
 
 11
 II CEDA's Application to Non-California Dealers
 
 
 12
 In the alternative, Trimble argues that the CEDA does not apply to dealers located outside of California. Trimble argues that the CEDA was only intended to protect dealers located within California and that, as a result, it does not apply to this IDA, despite the parties' agreement that California law governed the IDA.
 
 
 13
 If a state law does not have limitations on its geographical scope, courts will apply it to a contract governed by that state's law, even if parts of the contract are performed outside of the state. See Foreman, 517 F.2d at 356. When a law contains geographical limitations on its application, however, courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply. See Peugeot Motors of Am., Inc. v. E. Auto Distrib., Inc., 892 F.2d 355, 358 (4th Cir.1989); Bimel-Walroth Co. v. Raytheon Co., 796 F.2d 840, 842-43 (6th Cir.1986); Baldewein Co. v. Tri-Clover, Inc., 233 Wis.2d 57, 606 N.W.2d 145, 153 (2000).
 
 
 14
 The CEDA contains no express geographical limitations as to its application. It does not state that it applies only to dealers located in California. Trimble urges us to read such a limitation into the statute, arguing that the CEDA was intended only to protect dealers, not suppliers, and that California could not have intended to protect out-of-state dealers.
 
 
 15
 Although the CEDA appears generally to be directed at California dealers, there is no clear indication that the California legislature intended to limit its application to California dealers. In fact, there is significant evidence to the contrary. When introduced as AB 2478, the CEDA did contain an express geographical limit. The bill originally limited the definition of equipment dealers to those dealers located "in this state." This language was deleted from the bill before its passage. This removal is a strong indication that the legislature did not intend strictly to limit the CEDA's application to dealers located in California. See Diamond Multimedia Sys. Inc. v. Superior Court, 19 Cal.4th 1036, 80 Cal.Rptr.2d 828, 968 P.2d 539, 550 (1999) (noting that if California legislature had intended to limit application of statute to parties located in California they could have added "in this state" to the requirements of the statute).
 
 
 16
 Although the California legislature undoubtedly was primarily concerned with protecting California dealers, the CEDA includes no express requirement limiting its protection to dealers located in California. Therefore, the CEDA can be applied to an out-of-state dealer through a choice of law provision in a contract. Because both parties agree that California law governs the IDA, the CEDA applies to this transaction.
 
 III Dormant Commerce Clause
 
 17
 Trimble argues that if the CEDA does apply to this non-renewal, then it violates the Commerce Clause.[3] Although the Commerce Clause acts as a grant of power to Congress, it also serves as a limitation on the powers of the states. Edgar v. MITE Corp., 457 U.S. 624, 640, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Direct regulation of commerce that occurs entirely outside of the state is generally prohibited, "`whether or not the commerce has effects within the State....'" Healy v. Beer Institute, 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) (quoting Edgar, 457 U.S. at 642-43, 102 S.Ct. 2629). A state law violates the Commerce Clause if its practical effect is to control conduct beyond the boundaries of the state. Healy, 491 U.S. at 336, 109 S.Ct. 2491.
 
 
 18
 Not every exercise of state power with some impact on interstate commerce, however, violates the Commerce Clause. If the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental," then the statute must be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); see also Edgar, 457 U.S. at 640, 102 S.Ct. 2629; S.D. Myers, Inc. v. City & County of San Francisco, 253 F.3d 461, 466 (9th Cir.2001).
 
 
 19
 Trimble first argues that the CEDA directly regulates interstate commerce. We do not agree. All of the cases cited by Trimble deal with laws that regulate out-of-state parties directly, not through contract. See Healy, 491 U.S. at 343, 109 S.Ct. 2491 (invalidating statute that prevented sale of alcohol at a price higher than that sold in neighboring states); Edgar, 457 U.S. at 646, 102 S.Ct. 2629 (invalidating statute that regulated all takeover offers for the shares of any company partially located in state); NCAA v. Miller, 10 F.3d 633, 640 (9th Cir.1993) (invalidating a statute that regulated the disciplinary procedures of national collegiate athletic associations). Here, however, the CEDA does not directly regulate the actions of parties located in other states, it regulates contractual relationships in which at least one party is located in California.
 
 
 20
 Therefore, the CEDA does not regulate commerce entirely outside of California. It applies only to contracts that have sufficient connections with California to support a California choice of law. Rather than interfering with commerce outside of California, the CEDA only applies to this case because the parties chose to be governed by California law. Applying California law to a contract that is performed only partially outside of California does not violate the Commerce Clause. See Foreman, 517 F.2d at 356; see also S.D. Myers, 253 F.3d at 469 (stating that an ordinance that affects an out-of-state entity only after the entity has affirmatively chosen to subject itself to the ordinance by contract does not directly regulate interstate commerce). "While a contract which covers multiple states may raise a difficult choice-of-law question, once that question is resolved there is nothing untoward about applying one state's law to the entire contract, even if it requires applying that state's law to activities outside the state." Instructional Sys., Inc. v. Computer Curriculum Corp., 35 F.3d 813, 825 (3d Cir.1994). The CEDA, as applied in this case, does not violate the Commerce Clause by directly regulating commerce entirely outside of California, because the contract here is, by the parties' choice, governed by California law, was performed in part in California, and involves a California corporation.
 
 
 21
 Trimble argues that even if the CEDA only indirectly affects interstate commerce, it still violates the Commerce Clause because the burdens on interstate commerce outweigh its local benefits. Trimble, however, points to no significant burdens that clearly exceed the local benefits to California.
 
 
 22
 Trimble argues that if the CEDA applies in situations like this one, then suppliers will be forced to attempt to comply with the laws of both California and the laws of the state in which the dealer is located. This burden, however, is not any greater than that imposed in any case where a contract is formed between parties located in two different states. The difficulties of this situation are dealt with by each jurisdiction's choice of law rules, and are no greater than with any other statute regulating contracts.
 
 
 23
 Trimble also argues that this application of the CEDA has the effect of exporting California's policies to other jurisdictions. Once again, this is no different than any other statute regulating contracts between parties located in different states. In every case in which one state's law is applied to contracts involving parties from other states, one state's law is, in a sense, being "exported." The CEDA creates no greater burden on interstate commerce than any other law regulating contracts.
 
 
 24
 Because Trimble has pointed to no burden on interstate commerce that clearly outweighs California's interest in regulating the behavior of California suppliers, the application of the CEDA in this case, in which the parties chose to have their contractual relationship governed by California law, does not violate the Commerce Clause. The district court erred in granting summary judgment in favor of Trimble on Gravquick's CEDA claim.
 
 
 25
 IV Summary Judgment on Trimble's Counterclaims
 
 
 26
 Gravquick devotes one sentence of its brief to its contention that summary judgment on Trimble's counterclaim should be reversed. Gravquick provides no argument to support this assertion other than to state that a reversal would "allow Gravquick to claim a set-off against the damages, if any, it is ultimately able to recover from Trimble." Gravquick provides no explanation of why it is entitled to a set-off or why the district court's grant of summary judgment should be reversed. The only cases cited by Gravquick are not applicable to this situation. See Jess v. Hermann, 26 Cal.3d 131, 161 Cal.Rptr. 87, 604 P.2d 208, 214-15 (1979) (refusing to apply set-off rules to cases of comparative fault involving insured parties in a negligence case); Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974) (addressing whether a bank's out-of-court seizure of a bank account to set off debts owed by a depositor violate the Constitution).
 
 
 27
 In the absence of any argument or authority supporting reversal, we affirm the district court's grant of summary judgment in favor of Trimble on Trimble's counterclaim.
 
 CONCLUSION
 
 28
 The district court's decision granting summary judgment in favor of Trimble on Gravquick's CEDA cause of action is reversed. We affirm, however, the district court's grant of summary judgment in favor of Trimble on Trimble's counter-claim. This case is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.
 
 
 29
 REVERSED in part, AFFIRMED in part, and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 As noted above, the only exception expressed in the IDA to the application of California law was the perfection of title for the products, which was to be governed by the laws of Gravquick's jurisdiction. This single exception emphasizes the fact that the parties intended California law to govern all other aspects of the IDA
 
 
 [2]
 Because Gravquick never agreed that the decision not to renew the CDA could be made by anyone other than Trimble, we assume in these circumstances that TNEL's decision not to renew was eventually ratified by Trimble in California
 
 
 [3]
 The Commerce Clause provides that "Congress shall have Power ... [t]o regulate Commerce... among the several States." U.S. Const., Art I, § 8, cl. 3