**BADGER METER INC, Plaintiff,**

v.

**VINTAGE WATER WORKS SUPPLY, INC., Defendant.**

No. C 02–5417 JL.

United States District Court, N.D. California.

Oct. 21, 2004.

---

8. Clerk's Docket No. 49.

Trenton H. Norris, Thomas S. Hixson, Tyler B. Theis, Bingham McCutchen LLP, San Francisco, CA, for Plaintiff Badger Meter, Inc.

Dennis Livingston, Mary Mix, Livingston Mix LLP, San Francisco, CA, for Defendant Vintage Water Works Supply, Inc.

**ORDER OF PARTIAL SUMMARY JUDGMENT Granting in Part Docket # 53 Denying Docket # 43; Denying Docket # 84; Denying without prejudice Docket # s 71, 72, 77, 78, 79, 85, 86, 87, 88, 89, 90, 91 and 92**

LARSON, United States Magistrate Judge.

### Introduction

Before the Court are the parties' Cross–Motions for Partial Summary Judgment:

1) Whether the California Equipment Dealers Act; California Business and Professions Code sections 22900–22927 ("CEDA") applies to the Distributor Agreement between Badger Meter, Inc. ("Badger") and Vintage Water Works Supply ("Vintage");

2) Whether the Distributor Agreement's choice of law provision is void;

3) Whether Badger violated CEDA when it unilaterally terminated Vintage's distributor agreement in October 2002.

4) Procedural and evidentiary issues—whether Badger's failure to file a Joint Statement of Undisputed Facts requires that the Court strike its pleadings; whether the Court should strike any of a number of declarations that the parties object to.

This Court has jurisdiction under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy meets the requisite standard. All parties have consented to the jurisdiction of this Court as required by 28 U.S.C. § 636(c).

After reviewing the written pleadings and the record in this case and hearing oral argument by counsel this Court grants partial summary judgment for Badger Meter, that CEDA does not apply to the contract in this case and that the choice of law provision in the Distributor Agreement is not void. The Court denies Vintage's motion for partial summary judgment that the choice of law provision in the parties' agreement is void and that Badger violated CEDA. The Court denies summary judgment on the issue whether either Badger or Vintage was fully compliant with the terms of the Agreement since there are material facts in dispute on this issue.

### Objections (by Docket Number)

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988). The following objections, except for Number 84, are denied *without prejudice,* because the court in no way relied on the evidence objected to in reaching its decision on summary judgment. The Court will reconsider the objections if necessary at trial. (Unless otherwise noted, objections are by Vintage):

71  Declaration of Gerald Huerter;

72  Declaration of Rusty Areias;

77  Badger objection to Declaration of George N. Zenovich;

78  Badger objection to Declaration of Craig Coker;

79  Badger objection to Declaration of Dennis L. Livingston;

84  The Court denies Vintage's objection to Badger's Separate Statement of Undisputed Facts and its motion to strike on procedural grounds only. The Court finds that the parties could not agree on a joint statement of undisputed facts and therefore filed separate statements. This Court's Standing Order provides that if the parties cannot file a joint statement as to all undisputed facts, that they should attempt to file a joint statement as to any facts which are undisputed, then file separate statements. Separate statements, such as the one filed by Badger, are authorized by this Court's order, and therefore comply with Civil Local Rule 56–2(a). Vintage's motion to strike Badger's Statements is denied. (*See* Vintage's Separate Statement of Undisputed Facts, Declaration of Trent H. Norris and Badger Meter Inc.'s Response to Vintage's Statement of Undisputed Facts.)

85  The Court denies without prejudice Vintage's objection to Badger's citation to unpublished decisions, as the Court relied only on published opinions in reaching its decision on summary judgment.

86  Declaration of Tyler Theis;

87  Declaration of Kathy Richards;

88  Declaration of Lawrence McNarnee;

89  Declaration of Paul Kindinger;

90  Declaration of Dennis Webb;

91  Declaration of Gerald Huerter;

92  Objections to Badger's response to Vintage's objections to Zenovich Declaration.

### Factual Background

### Undisputed Facts

The parties agree to the following:

For over 23 years Vintage was a small, family-owned, independent, authorized, retail dealer of Badger products and equipment in Northern California. Michael Brennan was the owner and President of Vintage. (Parties' Separate Statements of Undisputed Facts and Badger's Reply to Vintage's Separate Statement of Undisputed Facts)

Badger is a manufacturer and supplier of meters and related equipment, including water meters, flow meters, magmeters, automated meter reading ("AMR") systems, including Itron, Trace and Orion. Some Trace equipment has global positioning satellite ("GPS") functionality which allows utilities and customers to know exactly where a meter was installed and to allow automatic meter reading. *Id.*

Badger sold or supplied to Vintage, AMR products with GPS equipment. *Id.*

The parties operated under a written agreement entitled "Badger Meter, Inc. Authorized Distributor Agreement," for an initial term of five years, which was renewed annually. (Compendium of Exhibits, Ex. 1.)

On or about March 12, 2001, Badger renewed the Distributor Agreement with Vintage for another year from February 1, 2001 to February 1, 2002. On March 4, 2002, Badger sent a letter outlining a new rebate program for its distributors to Vintage even though the annual renewal had not yet been sent. Parties' Separate Statements and Badger's Response.

On October 25, 2002, Badger wrote to Vintage stating that it had "not yet received your signed amendments [for the renewal] that were sent out in May 2002 so we are resubmitting them to you for your signature." *Id.*

### Disputed Facts

The following facts are disputed by the parties, in whole or in part:

On October 31, 2002, Badger sent by Federal Express a letter unilaterally terminating the Distributor Agreement pursuant to paragraph 8.4 of the Distributor Agreement. The letter gave 60 days notice, and did not offer an opportunity to correct any alleged deficiencies. Ex. 7; Cook Decl. paragraph 13; Mertens Decl. paragraph 19.

Badger then assigned Vintage's sales territory to Counterdefendant Mountain States Pipe & Supply Co. ("Mountain States"), or one of its subsidiaries or affiliates. Mountain States is Badger's largest distributor and serves Arizona, Colorado, Kansas, New Mexico, Texas, Wyoming, Utah, Nevada and California. It represents the consolidation into one distributor of what were formerly several smaller, independent Badger dealerships. Cook Decl. paragraph 16; Decl. of Floyd S. Salser paragraph 14.

As a result of the termination, Vintage was forced to close its business. Michael Brennan, President of Vintage, passed away earlier this year. Vintage is currently owned by his widow, Rose Brennan. Cook Decl. paragraph 15.

### Procedural History

Badger sued in this district to recoup accounts payable by Vintage for Badger products sold. Vintage counterclaimed against Badger for breach of CEDA, breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with contractual relations, interference with prospective economic advantage, unfair business practices and unfair competition (Cal. Bus. & Prof.Code § 17200 *et seq.*), breach of fiduciary duty, violation of the California Franchise Relations Act (Cal. Bus. & Prof.Code § 2000, *et seq.*), misappropriation of trade secrets, fraud and unjust enrichment. Vintage also counterclaimed against Counterdefendant Mountain States for intentional inter-

ference with contractual relations, interference with prospective economic advantage, unfair business practices and unfair competition (Cal. Bus. & Prof.Code § 17200 *et seq.*), misappropriation of trade secrets and conspiracy.

Vintage claims that the Distributor Agreement is governed by CEDA, that the agreement's choice of law provision is void under CEDA, and that Badger's conduct violated CEDA. Badger contends that CEDA does not apply, the Agreement is governed by the laws of Texas, and that Vintage failed to meet the terms of the Agreement.

## Legal Analysis

### Summary Judgment Standard

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party moving for summary judgment who does not have the ultimate burden of persuasion at trial (in this case Vintage is both defendant and counter claimant, so it will have the burden of proof on its counterclaims) has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000). Where the party moving for summary judgment would bear the burden of proof at trial (in this case Badger Meter and Vintage cross-moved for summary judgment), it has the initial burden of producing evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir.2000). A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electrical Service v. Pacific Electric*, 809 F.2d 626, 630–31 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991).

### Application to the Case at Bar

In the case at bar, the parties' dispute is a mixed question of law and fact—whether the Distributor Agreement between the parties is governed by California law, specifically CEDA, as Vintage contends, or Texas law as Badger contends; if the Agreement is governed by CEDA, whether Badger violated CEDA as Vintage contends; if the Agreement is governed by Texas law, whether Vintage violated the Agreement as Badger contends. The first order of business is to decide whether the Agreement is governed by CEDA.

### CEDA

The California Equipment Dealers Act, Business and Professions Code sections 22900 through 22927 ("CEDA") governs agreements for the "retail distribution and sales of agricultural, utility, and industrial equipment." "Equipment" means machines designed for or adapted and used for agriculture, livestock, grazing, light industrial and utility, as those terms are customarily used in the industry. It does not include earthmoving and heavy construction equipment, mining equipment, or forestry equipment as those terms are cus-

tomarily used in the industry, nor does it include all-terrain vehicles as defined in Section 111 of the Vehicle Code."

CEDA prevents parties from waiving its provisions under certain circumstances. Section 22927 provides:

> "A provision in any contract or agreement with respect to a supplier that ... requires the application of the laws of another state is void with respect to a claim otherwise enforceable under this Chapter."

Consequently, if CEDA applies literally to the products manufactured by Badger and sold by Vintage, then the choice of Texas law is void. The first and most important question then, is whether CEDA applies.

### CEDA was not enacted to protect dealers in water meters.

This Court concludes that CEDA does not apply to the Agreement between Badger and Vintage.

In construing this statute, a court should adopt the restrictive rather than expansive meaning of such terms as "agricultural," "livestock," "grazing," "light industrial" and "utility." In accordance with the *nocitur a sociis* principle of statutory construction, "A court will adopt a restrictive meaning of a listed term if acceptance of a more expansive meaning ... would ... make the item markedly dissimilar to the other terms on the list." *Moore v. Cal. State Bd. Of Accountancy*, 2 Cal.4th 999, 1012, 9 Cal.Rptr.2d 358, 831 P.2d 798 (1992).

■ The statute expressly refers to equipment used in "agriculture, livestock, grazing, light industrial and utility," and expressly excludes "all-terrain vehicles," "earth-moving and heavy construction equipment," "mining equipment," and "forestry equipment." The express inclusions and exclusions refer to large motorized pieces of machinery and their related at-

tachments. Consequently, it is precisely large vehicle-type machinery and related attachments that constitute the sort of equipment covered by CEDA. Accordingly, this Court should not expand the meaning of the statute to include items markedly dissimilar to that type of equipment, such as water meters.

A remedial statute must only be liberally construed as a means "to protect persons within its purview," And "to promote its purpose." *Vinci v. Edmonds*, 185 Cal. App.3d 1251, 1256, 230 Cal.Rptr. 308 (1986), *rev'd on other grounds, Davis v. Harris*, 61 Cal.App.4th 507, 71 Cal.Rptr.2d 591 (1998). CEDA and its legislative history make clear that the persons within its purview are farm equipment dealers and that its purpose was to govern relations between the dealers and their farm equipment suppliers. Vintage is not within the group of persons for whom CEDA should be liberally construed.

CEDA was not enacted to protect water meter dealers. CEDA is a classic piece of special interest legislation. Water meter dealers were not involved when CEDA was enacted in 1992. (See Declaration of Dorothy H. Thomson in Support of Defendant Vintage's Motion: Authentication of Legislative History)

The FWEDA (Far West Equipment Dealers Association), of whom Gerald Huerter was the Executive Director and for whom George Zenovich was a lobbyist, (See *Id.* at Bates # 000140 and 000178) sought the help of the California Legislature, specifically Assembly members Rusty Areias and Jackie Speier. FWEDA members asked the legislators to protect them from mega-manufacturers who had slowly consolidated the farm equipment industry. (See *Id.* at Ex. 5, Bates # 00059–000107 for letters). These included Ford, Case, International Harvester and Fiat. Practically the only company which has neither

swallowed other companies nor been swallowed itself is John Deere. In fact, John Deere supported the enactment of CEDA. (*Id.* at Ex. 11, Bates # 000323, letter from Jerry D. Parkin).

There were by 1992 only six or eight major companies making tractors, balers, combines, threshers, backhoes and other big-ticket machines used by farmers and light industrial companies that lay gas and water pipeline and dig ditches for sewers and water lines. The dealers, mostly family-owned businesses, were at a disadvantage against the manufacturers, who signed them to exclusive contracts which required them to sell only one manufacturer's products, then sometimes cut them off, and left them holding expensive inventory and parts. (*Id.* at Ex. 4, Bates # 000059, letter from Robert P. Cook, Cook Tractors, Inc., Orange County; see also Ex. 12, Bates # 000328, letter from Assemblyman Rusty Areias to Gov. Wilson) Farm equipment dealers wanted the same protection granted by California statute to auto dealers. (*Id.* at Ex. 4, Bates # 000063—letter from Henry S. Miller of Valley Truck and Tractor Co., Yuba City).

CEDA requires manufacturers not to terminate contracts without notice and also to buy back unsold inventory and parts. When the Court looks at the letters of support for this bill, they are all from dealers in equipment like tractors, bobcats and backhoes for farmers and light industrial companies like pipeline layers and ditch diggers for sewage and gas pipelines. No pump manufacturers, no pipeline parts suppliers and no water meter dealers. Some water meter dealers may belong to FWEDA today but they didn't when CEDA was enacted. Some of the amendments to the bill removed lawn and garden equipment like riding mowers (Thomson Decl. At Ex. 11, Bates # 000181) and provided protection for banks holding security interests in equipment (*Id.* at Ex. 11,

Bates # 000174, letter from Maureen C. Padden, Legislative Counsel, California Bankers Association).

Vintage's attempt to pull terms like "agriculture," "light industrial," and "utility" from unrelated cases and statutes and the dictionary is irrelevant, given that CEDA specifically indicates that these terms are to be given their technical meaning as understood within the industry. *See In re Gundelfinger*, 87 Cal.App. 636, 638, 262 P. 465 (1927) ("one of the fundamental rules of statutory construction is that the words of a statute must be interpreted in their usual, ordinary and popular sense . . . *unless the context of the statute shows that they are used in a technical sense.*") (Emphasis added) The context of CEDA and the language of the statute itself—"as those terms are customarily used in the industry"—shows that they are used in a technical sense.

The exclusion of such equipment as earthmoving and heavy construction equipment, forestry equipment, mining equipment and all-terrain vehicles should be "construed as indicating that, in their absence, the preceding general language would have covered the matter included in the . . . exception." *Mono County v. Indus. Accident Comm.* 175 Cal. 752, 755, 167 P. 377 (1917). This also supports the construction of CEDA to include dealers in vehicular-type machinery, not water meters.

*Gravquick A/S v. Trimble Navigation International Ltd.*, 323 F.3d 1219 (9th Cir. 2003) doesn't help Vintage here because the Court of Appeals did not decide whether the defendant, a GPS (global positioning satellite) equipment dealer, was covered by CEDA. The parties in that case *agreed* that the products in the contract were literally included under CEDA, *Id.* at 1222. The only issue in dispute in *Gravquick* was whether certain acts occurring outside Cal-

ifornia, pursuant to a contract governed by California law, were subject to CEDA. The court held that CEDA had no "express geographical limitations" and, therefore it applied to a contract between a California manufacturer and a Danish dealer, where the decision to terminate the agreement was made in England. *Id.* at 1223.

In that case, Trimble, the manufacturer, claimed in its brief on appeal that global positioning equipment might have been used to guide crop dusters or locate gas lines, but that "agricultural items comprised only a small portion of the Trimble products sold through Gravquick." *GRAVQUICK A/S v. TRIMBLE NAVIGATION INTERNATIONAL LIMITED,* 2002 WL 32099875 (9th Cir.2002). This still doesn't help Vintage, because the court never ruled on that issue. So *Gravquick* says nothing about whether a water meter or other regulator type equipment is covered by CEDA.

Vintage's counterclaim refers to water meters as "utility" equipment, and it argues for the first time in its pleadings on the summary judgment motions that they are used in "agricultural" and "light industrial" equipment. Badger points to the legislative history of the statute, which confirms that the "industry" covered by CEDA is the agricultural and related equipment industry. No other industry requested the protection of CEDA or falls within its scope. Vintage presents no evidence from the legislative history that water meters were contemplated within the scope of CEDA.

### If CEDA doesn't apply, then the choice of law provision governs

The choice of law provision in the contract in the case at bar specifies:

"This Agreement shall be governed by and construed in accordance with the internal laws of the state of Texas." Compendium of Exhibits, Ex. 1. Choice of law provisions are given great defer-

ence in California, as the court noted in *Gravquick.* The court looked to the California Supreme Court, which had previously held in another case that "[t]he phrase 'governed by' is a broad one signifying a relationship of absolute direction, control and restraint. Thus, the clause reflects the parties' clear contemplation that 'the agreement' is to be completely and absolutely controlled by" the law of the jurisdiction named in the choice of law clause. *Gravquick,* 323 F.3d at 1222, *citing Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal. Rptr.2d 330, 834 P.2d 1148 (1992).

In fact, the choice of law provision in the contract in *Gravquick* was a major reason that the court in that case found that CEDA did apply. The choice of law in the contract in *Gravquick* was the law of *California,* which is distinguishable from the case at bar, in which the choice of law provision is the law of Texas.

This court finds that the contract in this case is governed by the laws of Texas. Vintage claims that Badger is trying to avoid both CEDA and the even stronger dealer protection laws of its home state of Wisconsin. However, CEDA does not literally apply. Vintage presents no authority for the proposition that a party to a contract cannot choose a state whose law is advantageous to it. Texas law does not require enforcement of CEDA, a California statute.

### If CEDA doesn't apply, then Badger may terminate without cause

The Distributor Agreement provides that:

"This Agreement may be terminated by either party, at any time, with or without cause upon not less than sixty (60) days advance written notice to the other party."

Exhibit 1 at paragraph 8.4.

■ Vintage may argue that it had already returned the signed Distributor

Agreement when Badger sent its letter of October 22, 2002, saying it had not received the return of the Agreement it had transmitted in May, so Badger did not provide sixty days notice. These are material issues of fact in dispute, whether Badger complied with the terms of the Agreement.

With respect to whether Vintage failed to satisfy the terms of the Distributor Agreement, which required certain marketing efforts, gross sales and market penetration, Vintage attempts to show that it fulfilled its contract obligations and that it made sufficient gross sales to meet its quota. However, this is a factual dispute, which the Court need not decide on summary judgment. Several of the witnesses who testify about sales are former Vintage employees now employed by Mountain States, so there is a credibility issue. The Court may not make credibility determinations at the summary judgment stage.

### Conclusion

CEDA does not apply to water meter dealers. In the case at bar, the parties disagree whether water meters are agricultural, light industrial or utility equipment. This court finds they do not fit into any of those categories, given the types of dealers who proposed the enactment of CEDA and the definition of "agricultural, light industrial and utility equipment" incorporated in the statute. Consequently, this Court finds that CEDA governs neither the business relationship nor the Distributor Agreement between the parties.

If CEDA does not apply to the parties' business relationship nor the Distributor Agreement, then the choice of law provision in the Agreement is not void, and accordingly the laws of Texas apply.

This Court may not make credibility determinations on summary judgment, and the issues of whether Badger properly terminated the Agreement or whether Vintage was fully compliant with the terms of the Agreement at the time of termination remain in dispute. However, the Agreement provided for termination by either party without cause on 60 days written notice. The evidence of that is also in dispute: Vintage says it immediately executed and returned the renewal and amendment packet sent by Badger in May 2002, and Badger says it didn't.

This Court grants partial summary judgment for Badger Meter, that CEDA does not apply to the contract in this case and that the choice of law provision in the Distributor Agreement is not void. The Court denies Vintage's motion for partial summary judgment that the choice of law provision in the parties' agreement is void and that Badger violated CEDA. The Court denies summary judgment on the issue of whether either Badger or Vintage were fully compliant with the terms of the Agreement at the time of termination.

IT IS SO ORDERED.